Kevin R. OLSON, Appellant,

v.

Donald W. BLAESER, et al.,
Defendants,

City of Fifty Lakes, et al., Respondents.

No. C8–90–121.

Court of Appeals of Minnesota.

June 19, 1990.

Gary J. Gordon, Mary P. Fritz, Fetterly & Gordon, Minneapolis, Minn., for appellant.

Timothy W. Waldeck, Jeffrey M. Bauer, Foster, Waldeck & Lind, Minneapolis, Minn., for respondents.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant Kevin R. Olson commenced this dramshop action against respondents City of Fifty Lakes and City of Fifty Lakes Municipal Liquor Store (the city) to recover damages for injuries he suffered in an auto accident. The trial court granted summary judgment for the city based on appellant's failure to comply with the 120–day notice of claim provision of Minn.Stat. § 340A.802, subd. 2. Appellant contends that the city had actual notice of his claim

within the 120–day period. Alternatively, he argues the notice of claim provision violates the equal protection clauses of the Minnesota and United States Constitutions. We affirm.

## FACTS

Appellant was severely injured on October 20, 1985, at 1:30 a.m., when a car driven by Donald Blaeser was involved in a collision with another vehicle. Appellant and Thomas Adair were passengers in Blaeser's vehicle. The three were returning home from a party at a friend's farm at the time of the accident. All three had been drinking beer that night, and some of the beer they consumed had allegedly been purchased by Thomas Adair from the city's liquor store. Adair was a minor at the time.

The driver of the other vehicle, Deanna Johnson, worked as a bartender at the municipal liquor store. When the accident occurred, Johnson had just completed an evening shift. Johnson's deposition testimony indicates she did not recognize the passengers or the driver of the other vehicle.

Donald Coulter, a police officer employed by the City of Crosslake, investigated the accident. Coulter's report points out that several cans of beer were discovered in Blaeser's vehicle. The report also states that both Blaeser and Adair smelled strongly of beer. The report does not reveal where the beer was purchased.

Appellant retained a law firm to represent him on March 8, 1986. He met with an attorney from the firm for the first time on March 11, and the firm commenced an investigation of the accident. On July 23, 1986, appellant's attorney served written notice of a dramshop claim on the city.

The city subsequently moved for summary judgment based on appellant's complicitous conduct and his failure to comply with the 120–day notice of claim provision of Minn.Stat. § 340A.802, subd. 2. Appellant conceded that written notice had not been timely served, but argued the city had "actual notice" of his claim within the 120–day period mandated by the statute. Additionally, appellant asserted that the notification provision violates the equal protection clauses of the Minnesota and United States Constitutions.

The trial court ruled that the city's claim of appellant's complicity could not be resolved at summary judgment. However, the trial court granted the city's motion based on appellant's failure to serve notice of a possible claim within 120 days. The trial court rejected appellant's actual notice argument and his constitutional claims.

## ISSUES

1. Did the trial court err by concluding that the city did not have actual notice of appellant's claim within the statutorily required time period?

2. Does the notice requirement of Minn. Stat. § 340A.802, subd. 2 violate the equal protection clauses of the Minnesota or United States Constitutions?

## ANALYSIS

On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the trial court erroneously applied the law. *Offerdahl v. University of Minnesota Hospitals & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). No material facts are in dispute on either issue raised by appellant. Thus, our review is limited to determining whether the trial court properly applied the law.

I.

*Actual Notice*

Appellant admits that written notice was not served on the city within 120 days of the date the attorney-client relationship commenced as required by Minn. Stat. § 340A.802, subd. 2. Nevertheless, appellant argues that the city had actual notice of a possible claim within 120 days of that date. Actual notice within the statutorily imposed time limit preserves a claim despite the failure to serve written notice. Actual notice is defined as "sufficient facts reasonably to put the licensee or governing

body of the municipality on notice of a possible claim * * *." Minn.Stat. § 340A.802, subd. 2 (Supp.1985). Appellant contends the city received actual notice of his claim: (1) from a police report filed by the investigating officer; and (2) because the driver of the other vehicle, Deanna Johnson, and one of her passengers, Marlys Jalens, were (coincidentally) employed at the liquor store by the city.

The supreme court addressed the issue of actual notice under the dramshop act in *Donahue v. West Duluth Lodge No. 1478 of the Loyal Order of Moose*, 308 Minn. 284, 241 N.W.2d 812 (1976). There, the plaintiff suffered a broken ankle on the premises of the Moose Lodge, a licensed liquor establishment. The injury occurred when an intoxicated patron fell on plaintiff. Within two or three days of the accident,

> plaintiff informed (1) the lodge secretary and club manager and (2) the lodge governor and board of directors that he intended to claim benefits under the lodge's insurance.

*Id.* at 285, 241 N.W.2d at 813. After learning of the plaintiff's injury, the lodge referred plaintiff to its property insurer. The insurer investigated the incident and denied coverage. No further investigation was undertaken by the lodge.

The supreme court held:

> the lodge * * * had actual notice of "a possible claim" sufficient to impose upon it the obligation to elicit from plaintiff whatever facts were necessary to ascertain whether his injury was within the purview of the Civil Damage Act.

*Id.* at 286, 241 N.W.2d at 814. The court concluded that since the lodge had notice of plaintiff's injury and of plaintiff's intention to make a claim, the lodge had an obligation to investigate the nature of plaintiff's claim.

Appellant argues that the accident report and the involvement of the city liquor store employees in the accident supplied actual notice here, and imposed an obligation on the city to investigate the incident to determine its potential dramshop liability. We reject this argument. Unlike the plaintiff in *Donahue*, appellant was not injured at the liquor store. Additionally, appellant

failed to inform the city of either his injury or his plan to make a claim within the 120–day period as the plaintiff in *Donahue* did. Consequently, because the city did not receive notice of appellant's injuries, no obligation to investigate the nature or cause of appellant's injuries could arise. Moreover, nothing in the police report on which appellant relies reveals any connection between the beer found in Blaeser's vehicle following the accident and the city's liquor store. Therefore, appellant's claim that the report contained facts sufficient to put the city on notice of a possible claim is not persuasive.

As further support for his actual notice argument, appellant cites a number of municipal liability cases in which the supreme court found actual notice had been provided. *See e.g., Kossak v. Stalling*, 277 N.W.2d 30 (Minn.1979); *Kelly v. City of Rochester*, 304 Minn. 328, 231 N.W.2d 275 (1975); *Jenkins v. Board of Education*, 303 Minn. 437, 228 N.W.2d 265 (1975). The facts of this case are, however, significantly different than the cases appellant cites. The injuries in both *Kelly* and *Jenkins* occurred on premises owned by the municipality while an employee was present. *Kelly*, 304 Minn. at 329–30, 231 N.W.2d at 275–76; *Jenkins*, 303 Minn. at 438, 228 N.W.2d at 265–67. *Kossak* involved an auto accident allegedly caused by the negligence of a municipal employee while driving a truck owned by the municipality. After the accident, the employee submitted a vehicle collision report to the municipality indicating that the plaintiff was injured. *Kossak*, 277 N.W.2d at 32–33. Here, in contrast, the accident did not occur on the premises of the city's liquor store and did not involve a municipal vehicle. Although the other driver was employed by the city at the liquor store, she was off-duty at the time of the accident and driving a private vehicle. We affirm the trial court's conclusion that the facts available to the city following the accident were insufficient to put it on actual notice of appellant's claim.

## II.

### Equal Protection

Appellant claims that the notice provision of Minn.Stat. § 340A.802 violates the equal

protection clauses of both the Minnesota and United States Constitutions in two ways. First, the statute requires dramshop claimants injured as a result of an illegal sale by a licensed retailer or municipal liquor store to give notice of the injury to the vendor within 120 days of entering an attorney-client relationship. However, claimants injured due to illegal sales by other persons subject to dramshop liability are not required to give notice. Second, only claimants represented by counsel are required to give notice of a claim within 120 days. Pro se claimants are impliedly exempt from the notice requirement. Thus, appellant argues, the statute erects more stringent jurisdictional requirements for dramshop claimants based on either the class of the seller or the status of the claimant. According to appellant, this violates the guarantee of equal protection which requires "that persons similarly situated be treated alike unless a rational basis exists for discriminating among them." *Bernthal v. City of St. Paul*, 376 N.W.2d 422, 424 (Minn.1985).

■ A party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision. *Hickman v. Group Health Plan, Inc.*, 396 N.W.2d 10, 13 (Minn.1986). Statutes challenged under the equal protection clause which do not burden fundamental rights or create suspect classifications are subject to review under the rational basis test. *Bernthal*, 376 N.W.2d at 424. A two-step inquiry is employed to determine whether a statute satisfies the rational basis test:

1. Does the challenged legislation have a legitimate purpose? and
2. Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

*Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 329 (Minn.1990); *Lienhard v. State*, 431 N.W.2d 861, 867 (Minn.1988).[1]

■ We must address two procedural arguments raised by the city before considering the merits of appellant's first argument. The city contends that appellant waived his "seller classification" argument by failing to raise it in the trial court. We disagree. The record reveals appellant challenged the constitutionality of the statute on equal protection grounds in the trial court, the parties have had adequate time to brief the constitutional issues, and the interests of justice will be furthered if we address this issue. *See McGuire v. C & L Restaurant Inc.*, 346 N.W.2d 605, 610 (Minn.1984) (recognizing limited exception to general rule that failure to raise constitutional argument in trial court constitutes waiver).

■ The city also claims that appellant, as a plaintiff, lacks standing to challenge the constitutionality of the notice provision on the ground that some potential defendants are entitled to receive notice while others are not. This characterization of appellant's argument is incorrect. He claims that the dramshop act unconstitutionally imposes more stringent jurisdictional requirements upon claimants, such as himself, who are injured by persons whose intoxication was caused by an illegal sale by a licensed retailer or municipal liquor store than it does in cases involving other potential defendants. Appellant's failure to comply with the allegedly unconstitutional notice requirement resulted in summary judgment for the city. It is clear appellant has been directly harmed by the alleged unconstitutionality, and we find he has standing to raise the constitutional challenge. *See City of Minneapolis v. Wurtele*, 291 N.W.2d 386, 393 (Minn.1980) (direct personal harm from alleged denial of constitutional rights is necessary for party to have standing to challenge statute).

A. Seller Classification

■ Minn.Stat. § 340A.801, subd. 1 (Supp.1985) establishes a cause of action for damages suffered by one injured by an intoxicated person against "a person who

---

1. The analysis is the same for both the state and federal equal protection claims. *Bernthal*, 376 N.W.2d at 424.

caused the intoxication * * * by illegally selling alcoholic beverages." Section 340A.802, subd. 1 requires a claimant to give written notice of injury to a licensed retailer or a municipal liquor store when an action is against one of these entities. The notice required by subdivision one "must be served by the claimant's attorney within 120 days of the date of entering an attorney-client relationship * * *." Minn.Stat. § 340A.802, subd. 2 (Supp.1985). Thus, appellant argues that claimants injured as a result of an illegal sale by a licensed retailer or municipal liquor store carry a heavier jurisdictional burden than claimants injured by other potential defendants such as bottle club permit holders, wholesalers, brokers, brewers, manufacturers, and farm wineries. According to appellant, persons injured as a result of an illegal sale by this second group of potential defendants do not have to comply with the 120–day notice requirement. The city contends these entities do not make the types of sales for which dramshop liability may be imposed because they do not sell directly to the general public, and therefore appellant's claim need not be addressed.

We will assume that some of the potential defendants appellant points to could make the types of illegal sales which would result in civil liability. *See, e.g., Rambaum v. Swisher*, 435 N.W.2d 19, 21–22 (Minn. 1989) (listing the types of illegal sales which have subjected vendors to dramshop liability and explaining method for determining whether liability should attach in a particular case). We note that all these entities are subject to some licensing requirements by the act and, contrary to appellant's argument, could also be considered "licensed retailers," within the meaning of Minn.Stat. § 340A.802, subd. 1 and therefore entitled to notice. Nevertheless, we will accept for the sake of argument appellant's contention that these entities are not entitled to notice of a possible claim.

Appellant concedes that the notice provision serves several legitimate purposes.[2] But, appellant contends the classification drawn among potential defendants by the statute does not further these purposes. Thus, the second step of the rational basis test controls our analysis of appellant's claim.

 The second part of the test requires us to determine whether it was reasonable for lawmakers to believe that by requiring notice only in cases involving licensed retailers and municipal liquor stores, the legitimate purposes of the notification provision would be furthered. *See Imlay*, 453 N.W.2d at 332. In making this determination, we must recognize that all of a statute's purposes do not have to be furthered in every conceivable scenario to pass constitutional muster. *Id.* Legislatures are not required to act with "mathematical exactitude" in adopting social or economic regulations. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam).

Illegal sales made by licensed retailers such as public bars, private clubs, restaurants, privately owned liquor stores, and municipal liquor stores have a serious impact on the public's access to and consumption of alcoholic beverages because these entities sell directly to the general public. *See Rambaum*, 435 N.W.2d at 22 (impact illegal sale will have on public access to and consumption of alcoholic beverages is an important factor to consider when imposing dramshop liability). In contrast, the entities identified by appellant as other potential defendants do not, as the city points out, sell alcoholic beverages to the general public on a regular basis. Thus, the legislature could have reasonably assumed that licensed retailers and municipal liquor stores will be subject to dramshop liability more often than the potential defendants

---

**2.** The supreme court has previously identified the purposes of the provision as:
1. To provide dramshops with an early opportunity to investigate claims;
2. to facilitate negotiation and settlement without litigation;

3. to correct any defects revealed by the occurrence before more people suffer injury;
4. to protect against stale and fraudulent claims.
*Wegan v. Village of Lexington,* 309 N.W.2d 273, 280 (Minn.1981).

identified by appellant, and would be most in need of prompt notification to institute procedures to ensure that violations do not recur, to investigate claims, to protect against stale claims, and to facilitate negotiation and settlement without litigation. *See Wegan*, 309 N.W.2d at 280. By requiring notice to the entities most likely to be subject to liability, the purposes of the notice provision will be served in the vast majority of cases. Therefore, we conclude that the notice provision adequately balances the competing interests and satisfies the rational basis test.

## B. Classification of Claimants

■ Appellant next contends that the notice provision discriminates against similarly situated victims by requiring notice from claimants represented by counsel, but not from claimants who represent themselves. Appellant asserts that there is no rational basis for this distinction because the defendant's need for notice is the same whether the claimant is represented by counsel or not.

The trial court rejected this claim, reasoning that the legislature could have rationally assumed that most dramshop litigants will be represented by counsel due to the complex nature of a dramshop action. Consequently, notice to a potential defendant within 120 days of the formation of the attorney-client relationship would further the legitimate purposes of the statute. The trial court also concluded that any advantage the statute gives a pro se claimant through an exemption from the notification provision may be necessary to allow the claimant to take steps to investigate and preserve a claim.

■ Minn.Stat. § 340A.802, subd. 2 impliedly exempts pro se claimants from the notice provision by requiring notice within 120 days of the date the claimant enters an attorney-client relationship with regard to a dramshop action. Appellant correctly points out that notice is no less necessary

in dramshop cases involving pro se litigants than it is in cases involving litigants represented by counsel. However, a law does not have to advance all of its purposes in every conceivable application to withstand a constitutional challenge. As long as a statute has legitimate purposes which the legislature could reasonably have believed were being promoted by a challenged classification, the statute will survive rational basis scrutiny. *Imlay*, 453 N.W.2d at 332. Here, the legislature could reasonably have assumed that most dramshop litigants will be represented by counsel. Thus, by requiring notification within 120 days of the commencement of the attorney-client relationship, the legislature could have concluded that the legitimate goals of the notification provision would be furthered in most cases. We affirm the trial court's ruling upholding the constitutionality of the statute.

■ We note in passing that the *jurisdictional* notice of claim provision contained in the dramshop act is harsh and shorter, by far, than any other similar provision of which we are aware.[3] Here, simply because of a failure to serve written notice of the claim within 120 days of the date the attorney-client relationship commenced, appellant's action against the city is barred forever. The plain language of the statute precludes any other construction to avoid this harsh result.

The purposes of the notice provision could be served just as well by making it a non-jurisdictional requirement. *See, e.g., Naylor v. The Minnesota Daily*, 342 N.W.2d 632, 634–35 (Minn.1984) (non-jurisdictional notice of claim provision in state tort claims act serves several legitimate purposes). By eliminating the jurisdictional aspect of the notice provision, the statute could still advance the purposes identified in *Wegan*, without so severely punishing a claimant who fails to give notice within 120 days. Furthermore, a dramshop "could assert the absence of notice as a defense,

---

**3.** A 120–day absolute statute of limitations, which this particular notice requirement amounts to, raises serious philosophical concerns over what may be the questionable balancing of the economic rights of defendants and the legitimate rights of redress by injured parties.

providing it could establish prejudice." *Naylor*, 342 N.W.2d at 634. The legislature could use the state tort claims act as a model, amend the dramshop act accordingly, and still continue to protect both claimants and liquor vendors.

## DECISION

The trial court properly concluded the city did not have actual notice of a possible claim. The notice of claim provision, although harsh, does not violate the equal protection clauses of the Minnesota or United States constitutions.

Affirmed.