*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0216**

Kimberly L. Meyer, et al., Plaintiffs,

William Buskey, et al.,
Appellants,

vs.

American Legion Post #270, d/b/a Buffalo American Legion or
Buffalo American Legion Post,
Respondent,

and

American Legion Post #270, Third Party Plaintiff,

vs.

Gretchen Root, Third Party Defendant.

**Filed December 19, 2016
Affirmed
Rodenberg, Judge
Dissenting, Smith, Tracy M., Judge**

Wright County District Court
File No. 86-CV-14-5191

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota; and Guy E. Mattson, Heartland Injury Law, Mendota Heights, Minnesota (for appellants)

Joseph A. Nilan, T. James Power, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Larkin, Judge; and

Rodenberg, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellants William Buskey, Ben Meyer, Katie Hodgson, Jenny Venstad, Elizabeth Bork, and Jeremiah Buskey sued respondent American Legion Post #270, d/b/a Buffalo American Legion or Buffalo American Legion Post, for damages alleged to have been suffered by each of them as a result of the death of Mary Jo Meyer-Buskey in an automobile collision on October 19, 2012. The district court granted partial summary judgment dismissing appellants' claims against respondent based on appellants' admitted failure to comply with the 240-day notice-of-claim provision of Minn. Stat. § 340A.802 (2014) coupled with an absence of facts showing that respondent had actual notice of appellants' claims within the 240-day period. Appellants argue on appeal that the district court erred in determining as a matter of law that respondent did not have actual notice of appellants' potential claims within the 240-day statutory limit. Applying the statute and the relevant case law, we affirm.

## FACTS

On October 19, 2012, Zachary Jennings was driving in Wright County, Minnesota. His vehicle crossed the center line of the roadway and struck an oncoming vehicle that was driven by Mary Jo Meyer-Buskey and occupied by Sonja Sjolander, Kimberly Meyer, and Jonathan Meyer. Jennings and Meyer-Buskey were killed, and Meyer-Buskey's passengers were injured.

The post-collision investigation revealed that Jennings had been drinking alcohol at respondent's business before he drove and was significantly intoxicated at the time of the

collision. Respondent's manager and staff learned of the collision after people talked about it in the bar. At management's request, the server who had provided alcohol to Jennings wrote a statement indicating that she had served Jennings four alcoholic beverages on the evening of October 19, but that he did not appear intoxicated.

On October 25, 2012, appellants retained an attorney for claims related to Meyer-Buskey's death. Kimberly and Jonathan Meyer were separately represented, as was Sjolander. Counsel for Sjolander provided respondent with written notice of a possible claim pursuant to Minn. Stat. § 340A.802, subd. 1. The notice was forwarded to respondent's dramshop[1] insurer, Capitol Specialty Insurance Corporation (Capitol Specialty), and received on March 18, 2013. The notice did not individually identify any of the appellants.

On March 19, 2013, an employee of Capitol Specialty began investigating the collision. The employee spoke with counsel for Sjolander, obtained Meyer-Buskey's obituary that listed her husband and eight children, and spoke with appellants' counsel. The employee's investigation notes state, "[Appellants' counsel] represents her husband Bill and their collective children—2 from their marriage, she had 4 from a prior marriage and he had 2 from prior." The notes indicate that the employee advised appellants' counsel of the insurance limits and that appellants' counsel stated he would send a retainer letter to Capitol Specialty. The employee's notes also indicate that she left a message with the

---

[1] Claims under the Civil Damages Act are often referred to as "dramshop" actions. *See Sather v. Woodland Liquors, Inc.*, 597 N.W.2d 295, 297 (Minn. App. 1999) (referring to the Civil Damages Act as the Dramshop Act and a claim thereunder as a dramshop action), *review denied* (Minn. Sept. 14, 1999).

defense attorney who was or would become respondent's counsel, noting that she had "requested file on CD" to send to him. On March 22, 2013, counsel for appellants sent a facsimile to Capitol Specialty, stating in part, "Please be advised that our firm has been retained to represent the family of Mary Jo Meyer-Buskey for claims related to her death in the accident on 10/19/12." There is no evidence in the record that any of this was communicated to respondent.

On April 2, 2013, Kimberly and Jonathan Meyer attempted to serve respondent via U.S. mail with a notice of their claims. Shortly thereafter, respondent's attorney called the attorney representing the Meyers, identified himself as respondent's lawyer, and directed that counsel for the Meyers should not contact his client. On April 5, 2013, respondent's counsel sent a letter to appellants' counsel identifying himself as counsel for respondent and requesting that appellants' counsel have no further direct communications with respondent. The letter identified the client of appellants' counsel as "Family of Mary Jo Meyer-Buskey" and the matter as "Date of Loss: October 19, 2012." No individual claimant was identified by the letter. On April 22, 2013, a sheriff's deputy served respondent with the statutory claim notices for Kimberly and Jonathan Meyer, which included a statement that Meyer-Buskey was killed as a result of the accident. That notice did not individually identify any of appellants.

On September 15, 2014, Sjolander, Kimberly and Jonathan Meyer, and appellants served a complaint on respondent for damages under the Civil Damages Act, Minn. Stat. §§ 340A.801-.802 (2014), resulting from injuries to Sjolander and the Meyers, and the death of Meyer-Buskey. Respondent answered that appellants' claims were barred for

4

failure to comply with the notice requirement of Minn. Stat. § 340A.802. Respondent thereafter moved for partial summary judgment on appellants' claims.

Respondent filed an affidavit with the district court stating that neither Capitol Specialty nor the employee of Capitol Specialty who worked on the claim file were authorized agents of respondent for purposes of notice under section 340A.802 and were not authorized to accept service on respondent's behalf. Respondent also filed an affidavit of respondent's manager, stating that, before the complaint was served, no employee, manager, or officer of respondent (1) knew of Meyer-Buskey's spouse or children or their potential claims; (2) had direct contact with Capitol Specialty regarding the claims of appellants; (3) had any knowledge of Capitol Specialty's investigation; or (4) had knowledge of any communication between Capitol Specialty and appellants' attorney. Each individual appellant provided deposition testimony in which each denied having any communication with respondent.

In response to the motion for partial summary judgment, appellants admitted that they had not provided written notice as required under subdivision 1 of section 340A.802. Appellants argued that the notice requirement was satisfied under the actual-notice exception contained in subdivision 2 of section 340A.802.

The district court summarily dismissed appellants' claims. The district court found that the facts of record were insufficient to reasonably put respondent on notice of appellants' claims. Specifically, the district court noted that no evidence was presented that respondent was aware, within the relevant 240-day period, of appellants' identities or the nature of their possible claims.

5

This appeal followed.

# DECISION

Summary judgment must be granted if the record evidence shows that there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. We review a district court's grant of summary judgment de novo. *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id.*

The Civil Damages Act creates a statutory cause of action against those who unlawfully furnish alcohol, where no cause of action existed at common law. *Whitener ex rel. Miller v. Dahl*, 625 N.W.2d 827, 833 (Minn. 2001). The act "may be liberally construed where its provisions are clear as to intent and purpose," but the act "must be strictly construed in the sense that it cannot be enlarged beyond its definite scope." *Urban v. Am. Legion Dep't of Minnesota*, 723 N.W.2d 1, 6 (Minn. 2006) (quotation omitted).

The Civil Damages Act provides a right of action for innocent persons injured by the intoxication of another. *See Lefto v. Hoggsbreath Enterprises, Inc.*, 581 N.W.2d 855, 857 (Minn. 1998) (recognizing that the statute allows damages for "*any* other person injured by the intoxication of another and who played no role in causing the intoxication"). The statute provides:

> A spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person

6

> who caused the intoxication of that person by illegally selling alcoholic beverages.

Minn. Stat. § 340A.801, subd. 1.

The proper plaintiff in a suit under the Civil Damages Act is the person damaged, and the claim is brought in his or her own name. *Beck v. Groe*, 245 Minn. 28, 45, 70 N.W.2d 886, 897-98 (1955). This is different than Minnesota's wrongful death act, where claims must be brought by a trustee (in the decedent's name) for the benefit of the decedent's heirs and next of kin. *Id.* In the event of recovery in such an action, the court "determines the proportionate pecuniary loss" suffered by each person entitled to recovery. Minn. Stat. § 573.02, subd. 1 (2014). Under the Civil Damages Act, damages in the case of death are limited to the decedent's dependents who experience a loss of means of support caused by the death. *Jones v. Fisher*, 309 N.W.2d 726, 730 (Minn. 1981); *Britamco Underwriters, Inc. v. A & A Liquors of St. Cloud*, 649 N.W.2d 867, 872 (Minn. App. 2002). The statute does not require a plaintiff claiming damages as a result of a death to have any legal relationship to the decedent. *Skelly v. Mount*, 620 N.W.2d 566, 569 (Minn. App. 2000), *review denied* (Minn. Feb. 21, 2001). *See also Lefto*, 581 N.W.2d at 857 (declining to require a legal relationship for damages related to loss of means of support).

A person who claims damages under the Civil Damages Act must give written notice of a claim to the licensee stating (1) "the time and date when and person to whom" alcoholic beverages were sold, (2) "the name and address of the person or persons" injured, and (3) the approximate time and date, and the place where the injury occurred. Minn. Stat. § 340A.802, subd. 1. "[T]he notice must be served by the claimant's attorney [upon the licensee] within 240 days of the date of entering an attorney-client relationship with the

7

person in regard to the claim." *Id.*, subd. 2. The statute provides that "[a]ctual notice of sufficient facts reasonably to put the licensee . . . on notice of a possible claim complies with the notice requirement." *Id.* "Actual notice within the statutorily imposed time limit preserves a claim despite the failure to serve written notice." *Olson v. Blaeser*, 458 N.W.2d 113, 115 (Minn. App. 1990). The burden of demonstrating compliance with the actual-notice requirement is on the claimant. *Schulte v. Corner Club Bar*, 544 N.W.2d 486, 488 (Minn. 1996).

The purpose of the notice requirement is to allow the licensee an early opportunity to investigate claims, to negotiate and settle claims without litigation, to correct any defects revealed by the occurrence, and to protect against stale and fraudulent claims. *Wegan v. Village of Lexington*, 309 N.W.2d 273, 280 (Minn. 1981); *Olson*, 458 N.W.2d at 119.

Compliance with section 340A.802 is a condition precedent to a civil-damages action. *Wallin v. Letourneau*, 534 N.W.2d 712, 716 (Minn. 1995). "Determining whether the notice provisions of Minn. Stat. § 340A.802 have been complied with is a jurisdictional matter to be disposed of by the court before trial." *Young v. 2911 Corp.*, 529 N.W.2d 715, 716 (Minn. App. 1995). Failure to comply with the notice requirement serves as a bar to any claims under the statute. *Oslund v. Johnson*, 578 N.W.2d 353, 357 (Minn. 1998) ("When a statute supplies a specific notice requirement, any claims under that statute are barred when notice has not been timely given.").

Appellants concede that they did not comply with the written-notice requirements of Minn. Stat. § 340A.802, subd. 1. Instead, they argue that respondent had actual and

8

sufficient notice of appellants' possible claims under Minn. Stat. § 340A.802, subd. 2, despite the failure to comply with subdivision 1.

Minnesota law formerly recognized notice to a dramshop insurer as adequate to satisfy the statutory-notice requirement. *See* Minn. Stat. § 340.951 (1984) (allowing actual notice to be measured by knowledge of a licensee's insurer). In 1985, the legislature amended and renumbered the statute and, in the process, removed notice to an insurer as sufficient notice of a dramshop claim. *See* 1985 Minn. Laws ch. 305, art. 10, § 2 at 1500 (removing "or its insurer" language from actual-notice requirement), *codified at* Minn. Stat. § 340A.802, subd. 2 (Supp. 1985). As currently codified, the act requires notice "to the licensee." Minn. Stat. § 340A.802. Likewise, where a claimant relies on the actual-notice exception to the notice-of-claim requirement, the statute plainly requires "[a]ctual notice of sufficient facts reasonably to put *the licensee* . . . on notice of a possible claim." Minn. Stat. § 340A.802, subd. 2 (emphasis added). The adequacy of claimed actual notice under section 340A.802, and its predecessor, has been examined in several cases.

*Donahue v. W. Duluth Lodge No. 1478 of Loyal Order of Moose* considered whether, under the predecessor statute to Minn. Stat. § 340A.802, a lodge had actual notice of a possible claim. 308 Minn. 284, 286, 241 N.W.2d 812, 814 (1976). The plaintiff informed the lodge's employee, manager, and directors that he had suffered injuries on the property and intended to make a claim under the lodge's insurance. *Id.* at 285, 241 N.W.2d at 813. The lodge neither made any investigation into the circumstances that caused the injuries nor elicited any facts from the plaintiff, but instead directed the plaintiff to the lodge's insurance company. *Id.* at 286, 241 N.W.2d at 814. Through its investigation, the

9

insurer had knowledge of sufficient facts to constitute actual notice, but did not communicate those facts to the lodge. *Id.* The court nevertheless held that "the lodge itself had actual notice of a possible claim sufficient to impose upon it the obligation to elicit from plaintiff whatever facts were necessary to ascertain whether his injury was within the purview of the Civil Damages Act." *Id.* (quotation omitted). In so holding, the supreme court relied on the fact that the plaintiff gave notice of the injury directly to the lodge and held that the obligation therefore fell on the lodge to elicit additional facts. *Id.* at 286, 241 N.W.2d at 814.

In *Olson*, the appellant was a passenger in a vehicle driven by an intoxicated person who had purchased alcohol at a municipal liquor store. 458 N.W.2d at 115. The vehicle in which the appellant was riding collided with a vehicle driven by an off-duty employee of the liquor store. *Id.* The appellant argued that the involvement of a liquor-store employee in the accident and the existence of a police report sufficed as actual notice to the licensee city and imposed upon the city the duty to investigate the incident to determine the potential dramshop liability. *Id.* at 116. However, because the appellant did not inform the city of his injuries or of his potential claim, the city did not receive sufficient notice of appellant's injuries. *Id.* It therefore had "no obligation to investigate the nature or cause of appellant's injuries" and the actual notice requirement was not satisfied. *Id.*

In *Wallin*, the supreme court affirmed a summary dismissal of a dramshop claim where there was no evidence in the record to support the conclusion that the licensee had actual notice of the claim within the statutory time period. 534 N.W.2d at 714. In *Wallin*, the appellants served a written notice of a claim on a bartender of the licensee. *Id.* The

10

bartender signed a receipt for the notice within the 240-day statutory limit. *Id.* However, the bartender had no memory of what he did with the notice after signing for it, and the licensee asserted that it had no knowledge of a possible claim until service of the summons and complaint, which was outside of the statutory notice period. *Id.* The supreme court held that there were no facts from which it could be inferred that the *licensee* actually received the notice-of-injury letter served on its bartender or that the licensee otherwise had actual notice of the claim for damages, despite the bartender's recollection that on a different occasion he had placed a certified letter on the licensee's desk. *Id.* at 715-16.

In *Schulte*, a district court's summary dismissal of claims under the Civil Damages Act was upheld for failure to give actual notice of a possible claim to the licensee. 544 N.W.2d at 489. The decedent was killed in a snowmobile accident after drinking alcohol in two bars. *Id.* at 487. Within a day, the owners of the bars were aware of the accident and that the decedent had been drinking alcohol in their establishments on the evening of the accident. *Id.* Witnesses stated that the decedent did not appear intoxicated. *Id.* The decedent's spouse and stepchildren brought claims against the bars under Minn. Stat. § 340A.801, but did not provide written notice within the statutory period after retaining counsel as required by Minn. Stat. § 340A.802. *Id.* The appellants argued that the bars had actual notice of sufficient facts to reasonably put them on notice of a possible claim. *Id.* Although the bars were aware of the death, they took no action to investigate the circumstances, take witness statements, contact an attorney, or submit the matter to an insurance carrier. *Id.* at 488. The claimant-spouse also did not mention a potential claim, despite seeing one of the licensees on a regular basis after the accident. *Id.* at 487.

11

The supreme court affirmed the district court's determination in *Schulte* that the bars lacked knowledge of sufficient facts to reasonably put them on notice of a possible claim. *Id.* at 489. The court in *Schulte* compared the facts to those in *Donahue*, and noted that there were only two facts on which appellants relied that evidenced notice of a possible claim: that the decedent had (1) been served beverages at the location, and (2) later died in an accident. *Id.* "[T]here must be something more than these two points of information to reasonably put a licensee on notice of a possible claim for purposes of the actual notice requirement in Minn. Stat. § 340A.802." *Id.* The supreme court specifically noted the absence of any notice of evidence that the decedent appeared intoxicated while present at the bars. *Id.*

Here, appellants argue that the facts of record support a finding of actual notice sufficient to satisfy the statute. First, appellants argue that the actual-notice requirement was satisfied because respondent was aware that Jennings had been served alcohol at American Legion and was then involved in a collision in which Meyer-Buskey died. This argument was rejected in *Schulte*. The fact that a licensee is aware of an accident involving a person who had been drinking alcohol at the licensee's bar is insufficient to constitute actual notice of a possible claim. *Id.*

Second, appellants argue respondent had actual notice of their possible claims because respondent received timely written notices of the claims of Sjolander and the Meyers. They argue that those notices provided sufficient facts to put respondent on notice of other possible claims arising from Meyer-Buskey's death and alerted respondent to make an investigation into its possible liability. The district court rejected this argument

12

because the Sjolander and Meyer notices did not reference or identify appellants in any manner. Appellants argue that the district court erred because it ignored the statutory language that actual notice is satisfied by notice of "a possible claim." Respondent argues in reply that appellants' reading fails to interpret the statute in light of its other provisions, which define a broad group of potential claimants, and which require that notice of a claim must be given by "a person who claims damages" under Minn. Stat. § 340A.801, subd. 1.

We agree with the district court's application of the statute, which unambiguously requires notice "to the licensee" by the "person who claims damages." While it is possible that respondent could have determined the universe of potential claimants arising from Meyer-Buskey's death from the information it could glean from the Sjolander and Meyer notices plus some independent investigation of persons who may have sustained damages properly recoverable under the Civil Damages Act because of the death, we would have to rewrite the statute to hold that sufficient. Information identifying the individual claimants was not given "to the licensee," and nothing of record demonstrates that respondent was actually aware, within the 240-day period, of the identities of the individual claimants who claim to have suffered damages as a result of Meyer-Buskey's death, or of their intent to assert claims.[2]

Appellants cite *Kelly v. City of Rochester*, 304 Minn. 328, 231 N.W.2d 275 (1975), a municipal-liability case, to support the proposition that knowledge of facts of an injury

---

[2] Kimberly Meyer, Jonathan Meyer, and Sonja Sjolander, who survived the crash and complied with the notice-of-claim requirement of Minn. Stat. § 340A.802, subd. 1, are not within the group of persons claiming to have suffered damages as a result of Meyer-Buskey's death.

alone can satisfy the actual-notice requirement concerning a possible claim. In *Kelly*, the supreme court reversed the summary dismissal of the claims of a father and son after they failed to provide notice of a claim within the statutory time limit prescribed in Minn. Stat. § 466.05, subd. 1 (1971), the municipal notice-of-claim statute. 304 Minn. at 329, 231 N.W.2d at 275-76. The supreme court held that sufficient notice of a possible claim was provided to the municipality because a lifeguard prepared and filed a report of the accident pursuant to the regulations of the city's recreation department, which put the city on notice of its need to investigate the situation and prepare a defense from a possible claim. *Id.* at 332-33, 231 N.W.2d at 277. The report included the name and address of the injured person, as well as the date, time, place, and circumstances of the accident. *Id.* at 330, 231 N.W.2d at 276. The court specifically stated that "functions and departments of city government cannot be considered wholly independent from one another, but must be viewed as sharing information vital to the concerns of each." *Id.* at 332, 231 N.W.2d 277.

*Kelly* did not involve a claim under the Civil Damages Act. Accordingly, it did not involve the statute at issue here. Moreover, *Kelly* is factually distinguishable. Here, there is no record evidence that respondent knew or was provided the names and addresses of appellants, the injured parties eligible to make claims under section 340A.801. Although respondent's *insurer* might have known of at least William Buskey as a surviving spouse, and apparently knew that there were surviving children of the decedent, there is no record evidence that *respondent* had knowledge of the existence of a spouse or of the children of Meyer-Buskey. The collision did not occur on respondent's property, and appellants admit

that they had no contact with respondent's managers or employees within the relevant notice period.

We have previously differentiated between the importance of the identification of the injured party in the notice requirements of section 340A.802 and the identity of the person to whom alcohol was illegally provided, finding that the notice requirements under subdivision 1 of section 340A.802 were satisfied without the latter. *Young*, 529 N.W.2d at 716 ("[T]he statute appears to differentiate between the degree of precision with which the plaintiff must identify herself and the degree of precision with which she must identify her assailant."). *See Haugland ex rel. Donovan v. Mapleview Lounge & Bottleshop, Inc.*, 666 N.W.2d 689, 694-95 (Minn. 2003) (allowing an improperly captioned complaint to be amended, in part, because the notice included the name of the injured party and the relationship to the decedent). The record here fails to demonstrate respondent having had actual notice of the identity of any of appellants within the statutory notice period. Without knowledge of the existence of appellants, and in the absence of any communication to respondent that appellants, or any of them individually, contemplated bringing a claim for damages, respondent did not have notice, or the resulting opportunity to investigate the merits, of appellants' claims for purposes of settlement or defense. *See Wegan*, 309 N.W.2d at 280 (outlining the purposes served by requiring notice).

As in *Donahue*, respondent's *insurer* may have been aware of the relevant facts as a result of its investigation into respondent's potential liability for claims. But there is no evidence of record that this information was communicated to respondent, which specifically denied receiving any information from Capitol Specialty. And the Minnesota

15

legislature has removed notice to an insurer as a sufficient basis for notice under the statute. *Compare* Minn. Stat. § 340A.951 (1984) (allowing actual notice to a licensee's insurer) *with* 1985 Minn. Laws ch. 305, art. 10, § 2 at 1500 (removing "or its insurer" language). Present law requires that actual notice be measured by the facts known by the licensee, and not those known by a third party. Therefore, notice to Capitol Specialty of a possible claim was insufficient to serve as actual notice to respondent.

Appellants contend that Capitol Specialty provided the identities of the claimants to respondent's attorney, and that this is sufficient to constitute actual notice. This argument is not supported by any evidence contained in the record. Although we view the evidence in the light most favorable to the nonmoving party and resolve factual inferences against the moving party, a party with the burden to establish an element cannot rely on unsupported allegations and mere averments. *Rochester City Lines, Co.*, 868 N.W.2d at 661; *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997); *Bebo v. Delander*, 632 N.W.2d 732, 737 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001). Appellants did not move the district court to continue the summary judgment motion to accommodate further discovery concerning communications among respondent's manager, Capitol Specialty, and respondent's attorney. There is simply no record evidence that respondent or its attorney knew, within the relevant notice period, the identities of persons claiming damages as a result of Ms. Meyer-Buskey's death. Because the persons who may claim damages under 340A.801 is expansive and has no legal-relationship limitations, the identity of a person claiming to have been harmed by an illegal sale is an indispensable part of the actual-notice requirement. *See Olson*, 458 N.W.2d at 115 (holding that because the

16

appellant did not inform the city of his injuries or of his potential claim, the city did not receive notice of appellant's injuries and therefore "no obligation to investigate the nature or cause of appellant's injuries could arise").

There is a good deal of common-sense allure to appellants' argument that the various sources of information available to respondent sufficiently put it on notice that additional claims might arise from the October 19 collision. Respondent knew that it had served Jennings alcohol and that persons were injured after he crashed his motor vehicle. But the record is devoid of evidence that respondent knew that the individual appellants were claiming to have suffered damages as a result of Meyer-Buskey's death, or even that respondent knew, within the statutory notice period, that appellants existed. That being so, the law compels dismissal of appellants' claims for failure to comply with the notice requirements of the statute.

Appellants bear the burden of establishing that respondent had actual notice of sufficient facts to reasonably put it on notice of a possible claim under the Civil Damages Act. *Schulte*, 544 N.W.2d at 488. Appellants have not demonstrated that respondent had notice, within the 240-day statutory time limit, of sufficient facts to reasonably put it on notice that appellants claimed injury as a result of the death of Meyer-Buskey. As such, appellants' claims were properly dismissed by the district court. *See Olson*, 458 N.W.2d at 119-20 (noting that the jurisdictional requirements of the Civil Damages Act may cause harsh results but that it is the province of the legislature to modify the jurisdictional requirements).

**Affirmed.**

17

**SMITH, TRACY M.**, Judge (dissenting)

The question in this appeal is whether American Legion was required to have known the specific identities of the family of Mary Jo Meyer-Buskey to satisfy "[a]ctual notice of sufficient facts reasonably to put the licensee . . . on notice of a possible claim." Because I believe that the circumstances of this case provided American Legion with sufficient facts to constitute actual notice of a possible claim under Minn. Stat. § 340A.802, subd. 2 (2014), I respectfully dissent.

As an initial matter, the language of section 340A.802, subdivision 2, does not require the licensee to be in possession of the identical information required by subdivision 1. Minn. Stat. § 340A.802, subds. 1, 2 (2014). Subdivision 1 delineates the specific information that claimants must include in their written notice in order to guarantee that they have met the limitations period,[1] while subdivision 2 looks at what defendants actually knew and whether those facts were sufficient to put them on notice of a possible claim.

In examining actual notice in *Schulte v. Corner Club Bar*, the Minnesota Supreme Court did not state that the licensee must be aware of the same information required for written notice in order to satisfy actual notice under subdivision 2. 544 N.W.2d 486, 489 (Minn. 1996). In *Schulte*, following the death of a patron in a snowmobile accident, the patron's surviving wife and stepchildren sued two bars that the patron had visited. *Id.* at 486-87. The opinion notes that one bar owner had seen the patron's widow after the

---

[1] Even subdivision 1 allows for omissions in written notice unless the omission is of a "substantially material nature." *Id.*, subd. 1.

accident, but she gave no indication of a possible dramshop claim. *Id.* at 487. As for the other bar, the opinion gives no indication that it knew anything about the patron's widow or stepchildren. Yet the court's reasoning in rejecting actual notice was not that the specific family members had not identified themselves as possible claimants. *Id.* at 489. Rather, the court reasoned that "there must be something more" than knowledge of a sale and knowledge of a subsequent accident to put the licensee on notice of a possible claim for purposes of the actual notice requirement. *Id.* at 488-89.[2] Here, there is substantially more.

It is clear that, within the 240-day statutory limitations period, American Legion knew the name of the driver, Zachary Jennings, who had been served alcohol at American Legion. American Legion knew the date, time and location of the sale of alcohol to Jennings. American Legion knew the date, time, and location of the collision. American Legion knew that Meyer-Buskey was driving a vehicle involved in the collision and that she died as a result of the collision. American Legion knew that passengers in Meyer-Buskey's vehicle were asserting claims for damages under the Civil Damages Act in connection with the October 19 collision—claims that American Legion submitted to its insurer. And American Legion's lawyer, representing American Legion with respect to the passengers' claims, also knew—as reflected in his correspondence—that the "Family of Mary Jo Meyer-Buskey" were represented by counsel with respect to their "loss" of "October 19, 2012" in connection with the "American Legion." American Legion was

---

[2] The supreme court in *Schulte* also observed that "[n]either liquor licensee conducted an investigation into the circumstances of the accident, took witness statements, contacted an attorney, or submitted the matter to an insurance carrier." *Id.* at 488. The facts here differ substantially.

aware that the Civil Damages Act was implicated with respect to the collision and sought the coverage and security offered through its insurance policy. It had notice of sufficient facts to reasonably put it on notice of possible claims.

The supreme court's decision in *Donahue v. West Duluth Lodge No. 1478 of the Loyal Order of Moose* supports this conclusion. 308 Minn. 284, 241 N.W.2d 812 (1976). In *Donahue*, the supreme court reversed an order dismissing a dramshop claim, concluding that the West Duluth Lodge had actual notice when a plaintiff who suffered a broken ankle on the premises informed the lodge that he intended to claim benefits under the lodge's insurance. *Id.* at 285, 241 N.W.2d at 813. The lodge submitted the claim to its premises insurer, which did not include liquor liability. *Id.* at 285-86, 241 N.W.2d at 813-14. That insurer denied the claim. *Id.* at 286, 241 N.W.2d at 814. In its investigation, the insurer learned sufficient facts to constitute notice of a potential dramshop claim, but the insurer did not relay the information to the lodge. *Id.* Even though the lodge did not receive those facts, the court held that, having notice of the plaintiff's injury, "the lodge had the burden to elicit whatever additional facts it needed to determine the nature of the claim." *Id.* at 287, 241 N.W.2d at 814. Here, unlike in *Donahue*, American Legion had notice of potential dramshop claims arising from the accident; it at most did not know the specific identifies of Meyer-Buskey's family members represented by counsel with respect to those possible claims. It easily could have elicited whatever additional facts it needed to determine the names of those specific claimants.

While *Kelly v. City of Rochester*, 304 Minn. 328, 231 N.W.2d 275 (1975), involved notice of claim to a municipality, it informs an understanding of the supreme court's

application of the phrase "actual notice of sufficient facts reasonably to put [the defendant] on notice of a possible claim" and the requirement that the defendant elicit additional information concerning the potential claim. In *Kelly*, the Minnesota Supreme Court decided whether notice of an injury provided to a municipality by municipal employees was sufficient to satisfy the notice-of-claim requirements of Minn. Stat. § 466.05, subd. 1 (1971). 304 Minn. at 329, 231 N.W.2d at 276. Although the statute at issue did not contain an exception for actual notice, the supreme court permitted the claim. *Id.* at 333, 231 N.W.2d at 277-78. The court wrote that "actual notice on the part of the municipality or its responsible officials of sufficient facts to reasonably put the governing body of the municipality on notice of a possible claim will be in compliance with the notice requirements of Minn. Stat. § 466.05, subd. 1." *Id.* at 333, 231 N.W.2d at 278. The court stated that upon receiving a report that a person was injured, including "all the information necessary for a prompt and thorough investigation," the municipality had actual notice of a possible claim. *Id.* at 332, 231 N.W.2d at 277. Significantly, not only was there not notice from the injured party that he was bringing a claim, but *Kelly* does not identify any facts suggesting that the injured party's father would also be bringing a claim. 304 Minn. at 329-30, 231 N.W.2d at 276. Here, in contrast, American Legion received two statutory notices of claims resulting from the collision.

Actual notice became a part of the municipal-liability statute. 1974 Minn. Laws, ch. 311, § 1, at 518. After *Kelly*, actual notice was also added to dramshop actions, and included virtually identical language. *See* 1969 Minn. Laws ch. 952, § 1, at 1856 (adding statutory notice requirements and actual notice to dramshop actions). Like in *Kelly*, a

licensee, when provided with sufficient facts concerning an injury and potential claim, has an obligation to elicit additional information to determine the nature of the potential claim. *Donahue*, 308 Minn. at 286, 241 N.W.2d at 814; *c.f. Olson v. Blaeser*, 458 N.W.2d 113, 116 (Minn. App. 1990) (noting that, because notice of the injury and potential claim was not provided to the city, an obligation to investigate the claim could not arise). And the purpose of providing notice of an injury in *Kelly* is similar to the purpose of requiring notice of injury to the licensee. *Compare Kelly*, 304 Minn. at 331, 231 N.W.2d at 276-77 (providing that the purpose of the notice-of-claim statute is to allow a full opportunity to the municipality to investigate claims, to settle meritorious claims without litigation, and to protect against stale or fraudulent claims) *with Wegan v. Village of Lexington*, 309 N.W.2d 273, 280 (Minn. 1981) (providing that the purpose of notice of dramshop claims is to provide the licensee an opportunity to investigate, negotiate, settle, and protect against stale or fraudulent claims). The purposes served by notice and the obligation to make inquiries into potential claims matched precisely what American Legion had the opportunity to do in this case.

American Legion, its insurer, and its attorney, took affirmative steps to investigate and defend against possible claims relating to the accident. American Legion's manager and staff were aware that the collision occurred. Within weeks of the collision, the manager of American Legion asked the server who had served Jennings on the night of the collision to provide a written statement concerning the sale of alcohol to Jennings. The server provided a written statement concerning her observations of Jennings's behavior and the amount of alcohol sold to him.

American Legion received Sjolander's notice, and thereafter tendered the notice to its insurance carrier. Capitol Specialty investigated the circumstances of the collision and American Legion's potential liability. Capitol Specialty was aware of the identities of Meyer-Buskey's spouse and children, who were listed in Meyer-Buskey's obituary. Capitol Specialty spoke with appellants' attorney, who stated that he represented the spouse and children of Meyer-Buskey. Notes from Capitol Specialty's investigator indicate that the insurer retained counsel to defend American Legion. American Legion's counsel, hired to defend against Sjolander's claim, wrote to appellants' attorney with respect to the case. As noted above, counsel for American Legion wrote that his firm had been retained to represent American Legion "with regards to the above matter;" the "above matter" referenced "Our Client" as American Legion, "Your Client" as "Family of Mary Jo Meyer-Buskey" and "Date of Loss: October 19, 2012."

American Legion, by and through its insurance provider and attorney, were provided the opportunity to make inquiries concerning the nature of appellants' potential claims and to investigate those claims. Although appellants did not have contact with American Legion after the collision, appellants, through their attorney, did have contact with and from the parties responsible for settling claims on behalf of American Legion.

Although the Civil Damages Act allows a broad class of possible claimants, as opposed to wrongful-death cases, I do not believe that the breadth of potential claimants is dispositive in this case. The Civil Damages Act "may be liberally construed where its provisions are clear as to intent and purpose." *Urban v. Am. Legion Dep't of Minn.*, 723 N.W.2d 1, 6, (Minn. 2006) (quotation omitted). The purpose of the act as a whole is to

"protect innocent third persons" from damages resulting from the illegal sale of alcohol, *Lefto v. Hoggsbreath Enterprises, Inc.*, 581 N.W.2d 855, 857 (Minn. 1998) (quotation omitted), and the purpose of actual notice is to provide a fair avenue of relief for persons who have failed, for whatever reason, to provide the statutory written notice. Here, American Legion's counsel knew that the represented parties were Meyer-Buskey's family. And that information—together with all of the other information about this case—was sufficient "reasonably to put the licensee . . . on notice of a possible claim." Minn. Stat. 340A.802, subd. 2. I would reverse the summary judgment and remand for further proceedings on the merits.