Arlene M. WALLIN, et al., Respondents,

v.

Scott Alan LETOURNEAU, Respondent,

Leaders' Enterprises, Inc., d/b/a the Hitchin' Post Bar and Restaurant, petitioner, Appellant.

No. C2-94-1046.

Supreme Court of Minnesota.

July 28, 1995.

Krister D. Johnson, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for appellant.

Walter M. Kaminsky, Terpstra, Black, Brandell, Kaminsky & Hoffman, Elk River, for Arlene M. Wallin, et al.

Scott A. Brehm, St. Louis Park, for Scott Alan Letourneau.

Steven W. Anderson, Dunkley, Bennett & Christensen, P.A., Minneapolis, for amicus curiae MN Trial Lawyers Assoc.

## OPINION

PAGE, Justice.

This appeal arises out of a lawsuit brought by Arlene and Michael Wallin (the Wallins) against Scott Letourneau[1] and Leaders' Enterprises, Inc. (Leaders' Enterprises), a Minnesota corporation, as a result of severe injuries sustained by Arlene Wallin in a motor vehicle accident with Letourneau on February 21, 1992. In their lawsuit, the Wallins allege that The Hitchin' Post Bar and Restaurant (The Hitchin' Post) served Letourneau alcoholic beverages while he was obviously intoxicated, and that Letourneau, shortly after leaving The Hitchin' Post, caused the accident which injured Arlene Wallin. The Wallins seek damages from Leaders' Enterprises because Leaders' Enterprises holds the liquor license for The Hitchin' Post.

The district court, in granting Leaders' Enterprises summary judgment, found: (1) that the Wallins failed to give Leaders' Enterprises written notice of their damage claim as required by the Civil Damages Act, Minn.Stat. § 340A.802[2] (1992); and (2) that

---

1. All claims against Letourneau were settled prior to trial.

2. Minn.Stat. § 340A.802 (1992) provides in relevant part as follows:

    Subdivision 1. Notice of injury. A person who claims damages and a person or insurer who claims contribution or indemnity from a licensed retailer of alcoholic beverages or municipal liquor store for or because of an injury within the scope of section 340A.801 must give a written notice to the licensee or municipality stating:

the Wallins' failed to show by clear and convincing evidence[3] that Leaders' Enterprises had actual notice of their damage claim.

The court of appeals reversed the district court and held that although the Wallins did not strictly comply with the written-notice requirements of Minn.Stat. § 340A.802, they had substantially complied with the requirements. *Wallin v. Letourneau,* 524 N.W.2d 275, 278 (Minn.App.1994). The court of appeals' holding was based on its conclusion that the district court reasonably believed that Leaders' Enterprises had received actual notice of the Wallins' damage claim. *Id.*

We reverse the court of appeals and hold that Leaders' Enterprises was entitled to summary judgment dismissing the Wallins' lawsuit because: (1) the Wallins failed to give Leaders' Enterprises written notice of their damage claim as required by Minn.Stat. § 340A.802; (2) the Wallins did not substantially comply with the written-notice requirements in Minn.Stat. § 340A.802; and (3) there is no evidence in the record to support the conclusion that Leaders' Enterprises had actual notice of the Wallins' claim within the time period required by Minn.Stat. § 340A.802, subd. 2.

The pertinent facts are relatively simple. The Wallins entered into an attorney-client relationship with regard to their claim against Leaders' Enterprises on February 24, 1992. The Wallins' attorney subsequently sent to The Hitchin' Post a certified notice-of-injury letter, dated April 6, 1992, which was intended to provide Leaders' Enterprises with the required statutory notice of the Wallins' claim.[4] The letter was addressed to:

> Hitching Post
> Highway 23
> Sauk Rapids, MN 56379

The return receipt for the letter, dated April 8, 1992, was signed by Joel Paul Swanson, a bartender at The Hitchin' Post. Leaders' Enterprises claims that Swanson was not an officer of or authorized agent for Leaders' Enterprises, and that no officer or authorized agent ever received the letter from Swanson. Swanson remembers receiving and signing for the envelope that contained the letter, but does not remember what he did with the envelope after signing for it. Swanson does remember that approximately 20 months later, sometime during December 1993 or January 1994, he signed for another certified letter, while at The Hitchin' Post, and placed that letter in The Hitchin' Post office of Audrey Leaders, Leaders' Enterprises' secretary and treasurer. Leaders' Enterprises asserts that it had no knowledge of the Wallins' claim for damages prior to January 14, 1993, when the Wallins' summons and complaint was served.

(1) the time and date when and person to whom the alcoholic beverages were sold or bartered;

(2) the name and address of the person or persons who were injured or whose property was damaged; and

(3) the approximate time and date, and the place where the injury to person or property occurred.

. . . .

An error or omission in the notice does not void the notice's effect if the notice is otherwise valid unless the error or omission is of a substantially material nature.

Subd. 2. Limitations; content. In the case of a claim for damages, the notice must be served by the claimant's attorney within 120 days of the date of entering an attorney-client relationship with the person in regard to the claim. * * * No action for damage or for contribution or indemnity may be maintained unless the notice has been given. * * * Actual notice of sufficient facts reasonably to put the licensee or governing body of the municipality on notice of a possible claim complies with the notice requirement.

In 1993, Minn.Stat. § 340A.802, subd. 2, was amended to require the claimant's attorney to provide the licensee with notice within 240 days after commencement of the attorney-client relationship. Act of May 24, 1993, ch. 347, § 22, 1993 Minn.Laws 2450, 2466.

3. The trial court found that the Wallins did prove by a preponderance of the evidence that Leaders' Enterprises had actual notice of the Wallins' damage claim. Because of our disposition of this case, we need not, and do not, decide which burden of proof is appropriate.

4. The district court found that the letter contained sufficient facts, if read, to reasonably put Leaders' Enterprises on notice of a possible claim. The district court also found that no other notice was sent.

■ "Summary judgment [is] a fully appropriate procedural vehicle" for a court to use when applying statutory language to the undisputed facts of a case. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 581 (Minn. 1977). When reviewing a summary judgment, this court reviews the record to determine: (1) whether there are any genuine issues of material fact; and (2) whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hosp. and Clinics,* 426 N.W.2d 425, 427 (Minn. 1988). When a trial court applies statutory language to the undisputed facts of a case, its conclusion is one of law and does not bind this court. *A.J. Chromy Constr. Co.,* 260 N.W.2d at 582.

■ In order to satisfy the written-notice requirements of Minn.Stat. § 340A.802 (1992), a party seeking damages from a liquor establishment is required to give written notice to the liquor establishment within 120 days of the date the party enters into an attorney-client relationship with respect to their damage claim. *Supra,* at footnote 2. Leaders' Enterprises contends that it did not receive written notice of the Wallins' claim within the 120–day statutory period. We agree. Subdivision 1 of Minn.Stat. § 340A.802 requires claimants who are seeking damages under its provisions to give written notice to the licensee of the liquor establishment. Subdivision 2 sets out the manner in which that notice must be given: claimants seeking damages must have their attorney serve the notice upon the licensee. Where the licensee is a corporation, Minn. Stat. § 302A.901[5] governs service.

For the Wallins to have satisfied the written-notice requirements of the statute, they would have had to serve the notice-of-injury letter on a registered agent of Leaders' Enterprises, or upon an officer of Leaders' Enterprises, or upon the Secretary of State.

Unfortunately for the Wallins, the notice-of-injury letter was not so served. The letter was served on Swanson, who as the record makes clear, was only a bartender at The Hitchin' Post and not an officer of or registered agent for Leaders' Enterprises, or the Secretary of State. While the Wallins argue that Minn.Stat. § 302A.901, subd. 4, allowed them to serve the notice upon Leaders' Enterprises "in any other manner * * * permitted by law," they do not explain how their service of the notice-of-injury letter was otherwise "permitted by law." We therefore hold that the Wallins failed to comply with the written-notice requirements of Minn.Stat. § 340A.802.

■ The Wallins contend that even if they were not in strict compliance with the written-notice requirements of Minn.Stat. § 340A.802, they substantially complied with those requirements. For the Wallins to have substantially complied with Minn.Stat. § 340A.802, the notice-of-injury letter would have to have been delivered to a responsible person reasonably likely to give the notice to Leaders' Enterprises at the next opportunity. *See O'Brien v. Mercy Hosp. and Convalescent Nursing Care Section,* 382 N.W.2d 518, 521 (Minn.1986). Swanson was not such a person. Absent a showing that the notice-of-injury letter was delivered to a responsible person reasonably likely to give it to Leaders' Enterprises, it cannot be said that the Wallins substantially complied with Minn. Stat. § 340A.802.

■ Finally, the Wallins argue that Leaders' Enterprises had actual notice of their dram-shop claim. This argument is based on their contention that it is undisputed that Swanson accepted and signed for the Wallins' certified notice-of-injury letter at The Hitchin' Post and that on the only other occasion where he accepted and signed for a certified letter at The Hitchin' Post, he placed that

---

5. Minn.Stat. § 302A.901 (1994) provides:

Subdivision 1. Who may be served. A process, notice, or demand required or permitted by law to be served upon a corporation may be served either upon the registered agent, if any, of the corporation named in the articles, or upon an officer of the corporation, or upon the secretary of state as provided in this section.

. . . .

Subd. 4. Other methods of service. Nothing in this section limits the right of a person to serve any process, notice, or demand required or permitted by law to be served upon a corporation in any other manner now or hereafter permitted by law.

letter on the desk in Audrey Leaders' office. From these facts, the Wallins conclude that Leaders' Enterprises had actual notice. The problem for the Wallins is that Swanson testified in his deposition that he did not remember what he did with their notice-of-injury letter and Audrey Leaders, in her deposition, denied having received it. We do not believe that on these facts it can be inferred that Audrey Leaders actually received the Wallins' notice-of-injury letter or that Leaders' Enterprises had actual notice of the Wallins' claim for damages.

We conclude that the Wallins failed to either strictly comply or substantially comply with the written-notice requirements of Minn.Stat. § 340A.802. We also conclude that there is no evidence in the record before us which supports the conclusion that Leaders' Enterprises had actual notice of the Wallins' dram-shop claim. We therefore reverse the court of appeals and reinstate the trial court's summary judgment.

Reversed.