Anne SCHULTE, Individually and as Mother and Natural Guardian of Jonathan Lee Bishop, Christopher Michael Bishop, and Susan Yahnke, Petitioners, Appellants,

Daron Schulte, Plaintiff,

v.

CORNER CLUB BAR, Upon Information and Belief, Mike's Liquor, Upon Information and Belief, Respondents.

No. C6–94–2426.

Supreme Court of Minnesota.

March 8, 1996.

Randall W. LeNeave, Minneapolis, for appellants.

John D. Sens, Minneapolis, for respondent Corner Club Bar.

Steven L. Reyelts, Aaron R. Bransky, Duluth, for respondent Mike's Liquor.

## OPINION

STRINGER, Justice.

On January 26, 1993, after drinking alcoholic beverages at respondent bars—Mike's Liquor and the Corner Club Bar—Ben Schulte died in a single vehicle snowmobile accident in Aitkin County, Minnesota. Ap-

pellants, the surviving wife and stepchildren of Schulte, brought a dram-shop claim against respondent bars pursuant to Minn. Stat. § 340A.801 (1992), asserting that they served Schulte alcoholic beverages while he was obviously intoxicated and that the unlawful sale of alcoholic beverages caused or contributed to his death. Written notice of the claim to respondent bars within 120 days of entering an attorney-client relationship was admittedly not provided as required by Minn. Stat. § 340A.802 (1992), but appellants claim that they satisfied the notice requirement because respondent bars had actual notice of facts sufficient to reasonably put them on notice of a possible claim. After reviewing cross motions for summary judgment on the notice issue, the trial court granted summary judgment to both Mike's Liquor and the Corner Club Bar, concluding that "merely being aware of an injury or death in connection with the operation of a liquor establishment does not constitute statutory notice." The court of appeals, in an unpublished decision, affirmed the summary judgment. We affirm.

On January 25, 1993, between 3:45 and 5:30 p.m., Ben Schulte began drinking with Bruce Christensen in the back of Hill City Mercantile, a hardware store Schulte owned in Hill City, Minnesota. According to Christensen, Schulte consumed "two or three beers." Shortly after 6:30 p.m., Schulte met Neil Hedin at Nine Mile Corner Bar and consumed three brandy Coke drinks with him. Schulte left Nine Mile Corner Bar at approximately 7:30 to 7:45 p.m. Hedin stated that Schulte was not showing any signs of impairment or intoxication.

Later that evening between 10:00 and 10:30 p.m., Ben Schulte arrived at Mike's Liquor and was served three brandy Coke drinks during a 45 minute to 1 hour time period. Mike Olson, the owner and licensee of Mike's Liquor, was not there. The bartender on duty testified that she saw nothing about Schulte's manner that evening to indicate that he had been drinking alcoholic beverages earlier or was intoxicated while at Mike's Liquor. Bar patrons who knew Schulte and talked to him at Mike's Liquor affirmed that he did not seem to be affected by the alcohol in any way. Schulte left Mike's Liquor at approximately 11:00 p.m.

Shortly before midnight, Herbert Stansberry, the owner and licensee of the Corner Club Bar, was beginning to close up for the night when he heard Schulte pounding on the door. When Stansberry let him in, Schulte was wearing a snowmobile helmet, and Stansberry asked him "how snowmobiling was." There was no discussion about where Schulte had been earlier in the evening. Between midnight and 12:30 a.m., Schulte consumed two brandy Coke drinks at the Corner Club Bar. Stansberry observed that Schulte's speech was normal and that he "walked fine." The only other person in the bar at the time similarly observed, "And [Schulte] looked really good to me, you know, I didn't think he had a drink in him." Schulte left the bar at 12:30 a.m., the last time he was seen before his death. When Schulte left the bar, heavy snow was falling—so heavy, as Stansberry observed, he could hardly see to drive his pick-up truck home.

At 8:35 a.m. on January 26, 1993, a snowmobile trail groomer reported finding Schulte's body about one-half mile from the Corner Club Bar on a snowmobile trail that Schulte knew well. The snowmobile apparently went straight at a curve on the trail, hit a tree adjacent to the trail, and Schulte's body was ejected from the snowmobile and hit a tree.

Word of Schulte's death spread rapidly throughout Hill City. Within a day of the accident, Mike Olson learned that Schulte had been killed in the snowmobile accident, and he also learned that Schulte had been drinking on a "sociable basis" at Mike's Liquor the night before. The first notice that Olson had of a potential claim, however, was the notice-of-claim letter, which arrived at Mike's Liquor on August 4, 1993. Although Olson had seen Schulte's widow on a regular basis after the accident, she never mentioned even the possibility of a dram-shop claim.

Herbert Stansberry learned of the snowmobile accident on the morning that Schulte's body was found. Deputy Roy Bruggman spoke to Stansberry at the Corner Club Bar after investigating the accident scene, and Stansberry told him that Schulte

had been served two drinks of brandy and Coke between 12:00 midnight and 12:30 a.m. Stansberry claimed that he had no knowledge that a dram-shop action might be brought against the Corner Club Bar until he received written notice from appellants on August 4, 1993. Neither liquor licensee conducted an investigation into the circumstances of the accident, took witness statements, contacted an attorney, or submitted the matter to an insurance carrier.

■ On review of a summary judgment, we note that "[s]ummary judgment [is] a fully appropriate procedural vehicle" to use when applying statutory language to the undisputed material facts of a case. *Wallin v. Letourneau*, 534 N.W.2d 712, 715 (Minn. 1995) (citing *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 581 (Minn.1977)). We review the record to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Id.* (citing *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988)). "When a trial court applies statutory language to the undisputed facts of a case, its conclusion is one of law and does not bind this court." *Id.* (citing *A.J. Chromy Constr. Co.*, 260 N.W.2d at 582).

Minnesota law prohibits the sale of alcoholic beverages "for the use of an obviously intoxicated person" and provides a right of action to a person who incurs a pecuniary loss "by an intoxicated person or by the intoxication of another person." Minn.Stat. § 340A.502 (1992); Minn. Stat. § 340A.801 (1992). Minnesota Statutes section 340A.802, subdivision 1 (1992) states that a person claiming damages under the dram-shop act must give written notice to the licensee stating: (1) the time and date when and the

person to whom the alcoholic beverages were sold or bartered; (2) the name and address of the person or persons who were injured; and (3) the approximate time and date, and the place where the injury to the person occurred. In 1992,[1] subdivision 2 provided in relevant part as follows:

> In the case of a claim for damages, the notice must be served by the claimant's attorney within 120 days of the date of entering an attorney-client relationship with the person in regard to the claim. * * * No action for damage or contribution or indemnity may be maintained unless the notice has been given. * * * *Actual notice of sufficient facts reasonably to put the licensee or governing body of the municipality on notice of a possible claim complies with the notice requirement.*

Minn.Stat. § 340A.802, subd. 2 (1992) (emphasis added).

■ Compliance with section 340A.802 is a condition precedent to a civil damage action. *Wallin*, 534 N.W.2d at 716; *Donahue v. West Duluth Lodge No. 1478*, 308 Minn. 284, 286, 241 N.W.2d 812, 814 (1976) (construing similar provision of predecessor statute). Appellants bear the burden of proving that respondent bars had notice of a possible claim. *See Wallin*, 534 N.W.2d at 713–14 & n. 3. Appellants concede that written notice of the claim was served on respondent bars 159 days after entering an attorney-client relationship, 39 days after the close of the statutory period. Nevertheless, appellants maintain that respondent bars had actual notice of sufficient facts to reasonably put them on notice of a possible claim.

We first interpreted the actual notice provision of the dram-shop act[2] in *Donahue v. West Duluth Lodge No. 1478*, 308 Minn. 284, 241 N.W.2d 812 (1976), where this court con-

---

1. In 1993, section 340A.802, subd. 2, was amended to require the claimant's attorney to provide the licensee with notice within 240 days after commencement of the attorney-client relationship. Act of May 24, 1993, ch. 347, § 22, 1993 Minn. Laws 2450, 2466.

2. This case actually arose under Minn.Stat. § 340.951 (1970) (now repealed), the predecessor of section 340A.802. While the language of the notice provision is substantially the same, section 340.951 required notice to be served

within 120 days after the injury occurred rather than within 120 days of the date of entering an attorney-client relationship, as Minn.Stat. § 340A.802 (1992) provides. We noted in *Donahue* that our construction of the dram-shop statute was based in part on the likelihood that a tort victim would be unskilled in the law and could not reasonably be expected to have known what facts the lodge might need to determine its potential liability. *Id.* at 287, 241 N.W.2d at 814.

sidered the sufficiency of the notice following an accident on the premises of the Duluth Lodge when one of two intoxicated patrons engaging in horseplay fell upon the plaintiff. Within two or three days of the accident, the plaintiff informed employees, officers, and directors of the Duluth Lodge that he intended to make a claim under the lodge's insurance. *Id.* at 285, 241 N.W.2d at 813. No attempt was made by the lodge to determine the circumstances that caused the injury, and the plaintiff was referred to the lodge's general insurance carrier. The carrier did not provide liquor liability coverage and denied the claim. The plaintiff's dram-shop claim was dismissed for failing to satisfy the written notice requirement of the statute, but this court reversed the district court, concluding that the Duluth Lodge had actual notice of a possible dram-shop claim. *Id.* at 286, 241 N.W.2d at 814.[3]

■ Respondents acknowledge knowing that Schulte died in a snowmobile accident after he had been drinking "sociably" in their respective bars, but argue that this was not enough to give them reasonable notice of a possible dram-shop claim. We agree. Notably absent from appellants' proof of actual notice was any evidence that Schulte exhibited signs of obvious intoxication that evening—indeed, the uncontroverted testimony of several witnesses is that Schulte was not exhibiting any signs of obvious intoxication.[4] A comparison of the facts here with those in *Donahue* is instructive; there the injury to the plaintiff occurred on the premises, and the lodge was given notice of an intent to pursue a claim for an injury through communications to its officers, directors, and employees, even though the exact nature of the

claim was unknown. In this case, appellants concede that two facts—the serving of alcoholic beverages and a subsequent accident—constitute the totality of the evidence of notice of a possible dram-shop claim against Mike's Liquor and the Corner Club Bar. We conclude that there must be something more than these two points of information to reasonably put a licensee on notice of a possible claim for purposes of the actual notice requirement in Minn.Stat. § 340A.802.

Accordingly, we agree with the trial court and the court of appeals that the licensees of Mike's Liquor and the Corner Club Bar lacked knowledge of sufficient facts to reasonably put them on notice of a possible dram-shop claim.

Affirmed.

PAGE, Justice (dissenting in part and concurring in part).

I agree with the court's conclusion that the appellants in this case failed to carry their burden of establishing that the owner of Mike's Bar had actual notice of sufficient facts reasonably to put him on notice of a possible claim within the statutory time frame set out in Minn.Stat. § 340A.802, subd. 2 (1992). I respectfully disagree, however, with the court's conclusion as it relates to the Corner Club Bar.

Section 340A.802, subdivision 1, requires a claimant under the Dram Shop Act to give written notice to the licensed retailer. Written notice under the statute need only contain the following information: (1) the time and date when and person to whom the alcoholic beverages were sold or bartered;

3. We recently considered the actual notice provision of section 340A.802 in *Wallin,* where the plaintiff, injured in a collision with an intoxicated motorist, brought a dram-shop claim against the bar at which the intoxicated motorist had been drinking prior to the accident. 534 N.W.2d at 713. The only notice of the dram-shop claim was a certified notice-of-injury letter, which a bartender remembered receiving and signing for, but did not remember what he did with the envelope after signing for it, and the licensee denied having received it. *Id.* at 714. On these facts, this court rejected the plaintiffs' argument that the licensee had actual notice of the dramshop claim. *Id.* at 716.

4. Although toxicological analyses of samples of blood taken from Schulte revealed an ethyl alcohol concentration of .18 grams per 100 milliliters of blood, this court has refused to conclude "that evidence of an .18–percent blood-alcohol content is sufficient in and of itself to establish a prima facie case of obvious intoxication." *Harden v. Seventh Rib, Inc.,* 311 Minn. 27, 33, 247 N.W.2d 42, 46 (1976) (noting expert testimony that some people accustomed to drinking could have a blood-alcohol content of .18 percent and not appear intoxicated). Neither liquor licensee was aware of Schulte's blood-alcohol content until after written notice had been served.

(2) the name and address of the person or persons who were injured or whose property was damaged; and (3) the approximate time, date, and place where the injury to person or property occurred. Minn.Stat. § 340A.802, subd. 1(1), (2), and (3) (1992). The written notice "must be served by the claimant's attorney within 120 days of the date of entering an attorney-client relationship with the person in regard to the claim." Minn.Stat. § 340A.802, subd. 2. Subdivision 2 also provides that "[a]ctual notice of sufficient facts *reasonably* to put the licensee * * * on notice of a *possible* claim complies with the notice requirement." *Id.* (emphasis added).

From the record before us, it is clear that appellants have met their burden of establishing that Herbert Stansberry, the owner of the Corner Club Bar, had "[a]ctual notice of sufficient facts reasonably to put [him] * * * on notice of a possible claim" under the Dram Shop Act arising as a result of Ben Schulte's death. *Id.* Within two hours of the discovery of Ben Schulte's body, Stansberry had all of the information required for written notice under section 340A.802, subdivision 1, which a person who claims damages under the Dram Shop Act is required to give. Stansberry knew that he had served Ben Schulte alcoholic beverages between 12:00 and 12:30 a.m. on January 26, 1993. He knew that Ben Schulte, a regular customer, had been killed in a snowmobile accident, and he knew that Ben Schulte had been killed within one-half mile of the Corner Club Bar sometime between 12:30 a.m. and approximately 9:00 a.m. on January 26, 1993. He also knew more. He knew that Ben Schulte had arrived at the Corner Club Bar on his snowmobile. He knew that he had served Ben Schulte two brandy and coke drinks within a 30–minute time period. He also knew that Ben Schulte left the Corner Club Bar on a snowmobile after finishing the second drink and that at that time it was snowing so hard that he (Stansberry) could hardly see to drive his own pickup truck.

The statutory notice requirement is met when the licensee has "[a]ctual notice of sufficient facts *reasonably* to put [him] * * * on notice of a *possible* claim." *Id.* (emphasis added). Based on the facts before us, I

would hold that, on that basis, the appellants met their burden of establishing compliance with the statutory notice requirements.

The court's decision adds to the actual notice requirement of section 340A.802, subdivision 2, the additional requirements that the licensee must have knowledge that the person who was served the drinks showed obvious signs of intoxication and that the sale to that person was an illegal sale. In essence, the court has amended the actual notice provision of Minn.Stat. § 340A.802, subd. 2, to require that the licensee have actual notice of a valid claim.

Therefore, I dissent.

GARDEBRING, Justice (dissenting in part and concurring in part).

I join in the dissent of Justice PAGE.