CHUTICH, Justice.
Appellants William Buskey, et al. (the Buskeys) brought claims against respondent American Legion Post #270 (American Legion) under the Civil Damages Act for damages allegedly arising out of the death of Mary Jo Meyer-Buskey in an automobile accident caused by a drunk driver. The district court granted summary judgment in favor of the liquor licensee, American Legion, finding that the Buskeys failed to provide timely notice of their claims. The district court specifically concluded that the correspondence of the Buskeys' attorney with American Legion's liquor-liability insurer and liquor-liability attorney did not qualify as "[a]ctual notice" to American Legion under Minnesota Statutes section 340A.802, subdivision 2 (2016). A divided court of appeals affirmed, holding that the actual-notice provision required American Legion itself to have actual notice of each claimant's identity and intent to pursue a claim. Meyer v. Am. Legion Post #270 , No. A16-0216, 2016 WL 7338739, at *6-7 (Minn. App. Dec. 19, 2016).
Based on the plain language of the statute, we hold that the actual-notice provision requires actual notice of sufficient facts to put the licensee on inquiry notice of a possible claim, not actual notice of a possible claim. In addition, the statute's plain language does not require notice of certain indispensable facts; it requires notice only of "sufficient facts." Finally, based on principles of agency law, we hold that actual notice to a licensee's liquor-liability attorney is notice to the licensee under section 340A.802, subdivision 2. Applying these principles and drawing all reasonable inferences in favor of the Buskeys on this issue of actual notice, we hold that the district court erred in granting summary judgment to American Legion. Accordingly, we reverse and remand to the district court for reinstatement of the Buskeys' claims.
FACTS
The facts of this case are not in dispute. They involve three groups of plaintiffs who provided various forms of notice to American Legion, its liquor-liability insurer, and its attorney. Key to determining whether the actual-notice provision of Minnesota Statutes section 340A.802, subdivision 2, was satisfied is an understanding of who had notice of what and when . "The summary judgment standard mandates that we view the facts in the light most favorable to the nonmoving party," which is the Buskeys. Kelly v. Kraemer Constr., Inc. , 896 N.W.2d 504, 506 (Minn. 2017).
On October 19, 2012, Mary Jo Meyer-Buskey died in an automobile accident after her vehicle was hit by the car of drunk driver Zachary Jennings and hit again by a third car. Jennings had previously been drinking alcohol at American Legion. His car crossed the center line and struck *12 Meyer-Buskey's vehicle, killing Meyer-Buskey and injuring passengers Jonathan Meyer, Meyer-Buskey's son; Kimberly Meyer, Meyer-Buskey's daughter-in-law; and Sonja Sjolander, a disabled adult in Meyer-Buskey's foster care.
Following the accident, various occupants of Meyer-Buskey's vehicle and their relatives sued American Legion. Passengers Jonathan and Kimberly Meyer (the Meyers) and Sonja Sjolander (along with her guardian) brought claims for their injuries under the Civil Damages Act.[1] The Buskeys also brought claims under the Act for damages arising from Mary Jo Meyer-Buskey's death; these plaintiffs included Meyer-Buskey's spouse, William Buskey, and children, Jeremiah Buskey, Ben Meyer, Katie Hodgson, Jenny Venstad, and Elizabeth Bork. The Act provides a right of action to various persons injured by an illegal sale of alcohol to an intoxicated person, including "[a] spouse, child, parent, guardian, employer, or other person [otherwise] injured in person, property, or means of support, or who incurs other pecuniary loss." Minn. Stat. § 340A.801, subd. 1 (2016).
The plaintiffs' complaint was served upon American Legion nearly 2 years after the tragic accident. American Legion first became aware of the accident, however, shortly after the collision from its own independent investigation. In the days and weeks following the accident, American Legion employees heard that Jennings had been involved in an accident involving a fatality after he consumed alcohol at American Legion. Less than 2 weeks after the accident, American Legion's manager had the waitress who served Jennings provide a written statement, which documented that she had served him four drinks but that he did not appear intoxicated. American Legion had no knowledge of any claims against it at this time. The issues here concern American Legion's notice of the Buskeys' claims.
The Buskeys retained attorney Guy Mattson on October 25, 2012, in conjunction with their dram-shop claims against American Legion. This entry into an attorney-client relationship triggered the Buskeys' responsibility to provide written notice of their claims to American Legion. Minn. Stat. § 340A.802, subd. 2 ; see id. , subd. 1 (2016) (describing the required contents of "written notice to the licensee"). This notice of claim "must be served by the claimant's attorney within 240 days of the date of entering an attorney-client relationship." Id. , subd. 2. The Buskeys, therefore, had until June 22, 2013, to give American Legion notice of their claims. It is undisputed that the Buskeys never provided timely written notice to American Legion itself.
The other injured passengers were separately represented. On November 28, 2012, Sjolander's attorney mailed her written notice to American Legion. This notice made no mention of Meyer-Buskey or her family. Five months after the fatal accident, in March 2013, an unidentified American Legion employee delivered Sjolander's notice to Thomes Insurance Agency, which then forwarded it to Capitol Specialty, American Legion's dram-shop insurer.
A Capitol Specialty employee then opened a new claim file and began investigating the accident. She identified Mary Jo Meyer-Buskey as a victim and found her obituary, which listed the names of her spouse and children. She also spoke to *13 another insurance adjuster who informed her that Mattson was "Mary Jo's attorney." She then phoned Mattson and made notes in the file that "[h]e represents her husband Bill and their collective children-2 from their marriage, she had 4 from a prior marriage and he had 2 from prior." She made no notes concerning the Buskeys' individual names.
In response, Mattson faxed a letter to this same Capitol Specialty employee that is perhaps best described as a letter of representation. This letter, sent on March 22, 2013, is addressed to Capitol Specialty and references "Your Insured: American Legion" and "Date of Loss: 10/19/2012." The subject line reads "My Client: Mary Jo Meyer-Buskey," but the text of the letter states that Mattson was "retained to represent the family of Mary Jo Meyer-Buskey for claims related to her death."[2]
Around this same time, the Capitol Specialty employee contacted attorney Joseph Nilan and retained him to represent American Legion. She requested that the "file" be sent to Nilan on a compact disc, but the record does not establish if this file included her notes and the March 22, 2013 letter that she received from Mattson on the Buskeys' behalf.
The record does not establish how Nilan came to know of the Buskeys or their counsel, but he reached out to Mattson by mail not long after Capitol Specialty retained his services. An April 5, 2013 letter from Nilan to Mattson referenced "Your Client: Family of Mary Jo Meyer-Buskey" and "Our Client: Buffalo American Legion Post" for the "Date of Loss: October 19, 2012." In this correspondence, Nilan requested that Mattson "[p]lease cease any communications with the American Legion and direct all future correspondence regarding this matter to our office."
Shortly thereafter, the Wright County Sheriff personally served American Legion with a written notice of claim from the Meyers. Notably, this notice-of-claim letter referenced "the death[ ] of Mary Jo Meyer-Buskey," but did not explicitly identify the Buskeys or their intent to bring claims of their own. By April 2013, then, American Legion had received timely written notice from Sjolander's attorney and the Meyers' attorney, but it had not received written notice from the Buskeys' attorney. The Buskeys made no further attempts to provide American Legion, or its attorney, with formal written notice within the 240-day timeframe, which ended on June 22, 2013. See Minn. Stat. § 340A.802.
The Buskeys served and filed their lawsuit the following year, in fall 2014. Before the close of discovery, American Legion moved for summary judgment on the Buskeys' claims based on their failure to provide timely statutory notice. The Buskeys conceded that they did not provide timely written notice under subdivision 1. But the statute contains a separate notice provision in subdivision 2, which provides: "Actual notice of sufficient facts reasonably to put the licensee ... on notice of a possible claim complies with the notice requirement." Minn. Stat. § 340A.802, subd. 2. The Buskeys argued that American Legion was on notice under this actual-notice provision.
In support of its motion, American Legion offered an affidavit from its manager, which stated that no employee, manager, or officer of American Legion (1) knew that Mary Jo Meyer-Buskey had relatives with potential claims; (2) had any direct contact with any employees or agents of *14 Capitol Specialty; or (3) knew of any communications between Capitol Specialty and the Buskeys' attorney. This affidavit was corroborated by the depositions of the Buskeys, who each testified that they had never communicated with anyone from American Legion about the fatal accident.
The district court granted summary judgment to American Legion, holding that the Buskeys "did not provide facts sufficient to reasonably put American Legion on notice of their claims," particularly "[a]bsent evidence indicating a direct communication between Capitol Specialty and American Legion regarding the identity of the Buskey plaintiffs." The court also concluded that it was "irrelevant" that American Legion had hired an attorney and that he had communicated with the Buskeys' counsel.[3]
The court of appeals affirmed. Meyer , 2016 WL 7338739, at *8. The court of appeals "agree[d] with the district court's application of the statute, which unambiguously requires notice 'to the licensee' by the 'person who claims damages.' " Id. at *6. Although recognizing "a good deal of common-sense allure to [the Buskeys'] argument that the various sources of information available to [American Legion] sufficiently put it on notice that additional claims might arise from the October 19 collision," the court of appeals concluded that the record was "devoid" of any evidence that American Legion itself "knew that the individual [Buskeys] were claiming to have suffered damages ... or even that [American Legion] knew, within the statutory notice period, that [the Buskeys] existed." Id. at *7. In other words, the court of appeals treated notice of identity and notice of a possible claim as "indispensable part[s] of the actual-notice requirement." Id. In contrast, the dissent concluded that the insurer's and attorney's knowledge was relevant and that American Legion "had notice of sufficient facts" to put it on notice of the Buskeys' possible claims. Id. at *8 (Smith, J., dissenting). We granted review.
ANALYSIS
Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the moving party establishes that it is "entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03 ; see Senogles v. Carlson , 902 N.W.2d 38, 49 (Minn. 2017) (providing that a fact is material "when its resolution will affect the outcome of the case"). "When a trial court applies statutory language to the undisputed facts of a case," as the district court did here, "its conclusion is one of law and does not bind this court." Wallin v. Letourneau , 534 N.W.2d 712, 715 (Minn. 1995).
Matters of statutory interpretation are reviewed de novo. Christianson v. Henke , 831 N.W.2d 532, 535 (Minn. 2013). The threshold determination is "whether the statute's language, on its face, is ambiguous." Id. at 536 (citation omitted) (internal quotation marks omitted). "When the words of a law in their application to an existing situation are clear and free from all ambiguity," Minn. Stat. § 645.16 (2016), then "our role is to enforce the language of the statute and not explore the spirit or purpose of the law," Christianson , 831 N.W.2d at 537 (citation omitted) (internal quotation marks omitted).
*15 I.
This case presents three questions of statutory interpretation regarding Minnesota Statutes section 340A.802, subdivision 2 :
(1) Does the actual-notice provision require actual notice of a possible claim?
(2) Are there certain "indispensable" components of "sufficient facts" required to satisfy the actual-notice provision?
(3) Is actual notice to the licensee's dram-shop attorney equivalent to notice directly to the licensee itself?
We begin our analysis by reviewing the relevant statutory language. Section 340A.802, subdivision 1, specifies that dram-shop claimants "must" provide written notice of their claims to the licensee. Specifically, subdivision 1 requires "[a] person who claims damages ... from a licensed retailer of alcohol beverages ... [to] give a written notice to the licensee ... stating" the following:
(1) the time and date when and person to whom the alcoholic beverages were sold or bartered;
(2) the name and address of the person or persons who were injured or whose property was damaged; and
(3) the approximate time and date, and the place where the injury to person or property occurred.
Minn. Stat. § 340A.802, subd. 1. Errors or omissions in this written notice are inconsequential, so long as they are not "of a substantially material nature." Id.
Dram-shop claimants who fail to provide written notice under subdivision 1 may fall back on the actual-notice provision of subdivision 2: "Actual notice of sufficient facts reasonably to put the licensee ... on notice of a possible claim complies with the notice requirement." Id. , subd. 2. This provision serves as a safe harbor for claimants who do not comply with the written-notice requirement. See Donahue v. W. Duluth Lodge No. 1478 of Loyal Order of Moose , 308 Minn. 284, 241 N.W.2d 812, 814 (1976) (referring to the dram-shop actual-notice provision, previously codified at Minn. Stat. § 340.951, as a "saving clause").
Throughout this litigation, the Buskeys have conceded that they did not provide the requisite written notice under subdivision 1, but the parties dispute whether American Legion had "[a]ctual notice of sufficient facts reasonably to put [it] ... on notice of a possible claim" under subdivision 2. Only the interpretation of subdivision 2, the actual-notice provision, is at issue here.
A.
The first question before us is whether the court of appeals erred in interpreting the actual-notice provision to require that a licensee have "actual notice of a possible claim." Meyer , 2016 WL 7338739, at *4-5. The court of appeals appears to have borrowed this phrase from our holding in another dram-shop case, Donahue , 241 N.W.2d at 814. See Meyer , 2016 WL 7338739, at *4. In Donahue , the plaintiff broke his ankle on the premises of the lodge, a drinking establishment, when an "intoxicated patron[ ] engaging in horseplay fell upon him." 241 N.W.2d at 813. Within a few days, the plaintiff informed the lodge secretary, club manager, governor, and board of directors of his injury and his intent to make a claim for benefits. Id. at 813-14. We announced that "the lodge itself had actual notice of a possible claim ," which was "sufficient to impose upon it the obligation to elicit from plaintiff whatever facts were necessary to ascertain whether his injury was within the purview of the Civil Damages Act." Id. at 814 (emphasis added) (internal quotation marks omitted).
*16 But in Donahue we did not hold that "actual notice of a possible claim" was required-only that it was "sufficient." Id. Interpreting the actual-notice provision to require "actual notice of a possible claim" omits words from the plain language of subdivision 2 as follows: "Actual notice of sufficient facts reasonably to put the licensee ... on noticeof a possible claim complies with the notice requirement." Cf. Minn. Stat. § 340A.802, subd. 2. The actual-notice provision is unambiguous in requiring only "actual notice of sufficient facts," not actual notice of a possible claim.
Essentially, the provision in subdivision 2 is split into two related requirements, one requiring actual notice and the other requiring inquiry notice. It first requires actual notice of sufficient facts . Id. The question is then whether the facts are adequate to "reasonably ... put the licensee ... on notice of a possible claim." Id. In other words, the actual notice must put the licensee on inquiry notice of a possible claim. Actual notice is often described as "actual knowledge," Kirkwold Constr. Co. v. M.G.A. Constr., Inc. , 513 N.W.2d 241, 244 (Minn. 1994), whereas inquiry notice arises when a person has "actual knowledge of facts which would put one on further inquiry," Anderson v. Graham Inv. Co. , 263 N.W.2d 382, 384 (Minn. 1978) (emphasis omitted) (comparing actual notice, implied or inquiry notice, and constructive or record notice). Stated another way, under the first requirement of subdivision 2, the licensee must have actual notice of facts, and under the second requirement these facts must be reasonably likely to place the licensee on notice of a possible claim.
The court of appeals conflated "actual notice of sufficient facts" with "actual notice of a possible claim," which are two different things. Cf. Jaeger v. Palladium Holdings, LLC , 884 N.W.2d 601, 608 (Minn. 2016) ("These concepts, however similar they may sound, are not the same."). Such a reading, although incorrect, is perhaps understandable given that we have, on several occasions, referred to "actual notice of a possible claim" as satisfying the actual-notice provision. See, e.g. , Kossak v. Stalling , 277 N.W.2d 30, 33 (Minn. 1979) (interpreting a comparable notice-of-claim provision in Minn. Stat. § 466.05 for municipal tort claims); Donahue , 241 N.W.2d at 814. We therefore take this opportunity to clarify and hold that although "actual notice of a possible claim" will often satisfy the actual-notice provision, it is not required.
B.
The court of appeals held that "the identities of the individual claimants" are an "indispensable" part of "sufficient facts." Meyer , 2016 WL 7338739, at *6-7. Similarly, American Legion argues that "[t]he duty to provide notice is tied at the individual level to each person claiming damages." In support of this proposition, American Legion cites the written-notice provision, which makes clear that "[a] person who claims damages" must provide "the name ... of the person or persons who were injured." Minn. Stat. § 340A.802, subd. 1 ; see Meyer , 2016 WL 7338739, at *6 (quoting language from the written-notice provision and concluding that the actual-notice provision "unambiguously requires" that a licensee be "actually aware ... of the identities of the individual claimants").
Yet the word "identity" does not appear anywhere in the plain language of subdivision 2's actual-notice provision. See Minn. Stat. § 340A.802, subd. 2. The actual-notice provision only speaks in terms of "sufficient facts" that "reasonably" provide inquiry notice of "a possible claim." Id. The plain language of the actual-notice *17 provision does not require notice of a specific claimant's identity. See Premier Bank v. Becker Dev., LLC , 785 N.W.2d 753, 760 (Minn. 2010) ("[S]ilence in a statute regarding a particular topic does not render the statute unclear or ambiguous ....").
The very definition of "sufficiency" as being "enough" militates against holding that there are mandatory components of actual notice. See The American Heritage Dictionary of the English Language 1742 (5th ed. 2011) (defining "sufficient" to mean "as much as is needed; adequate; enough" and "being what is needed without being in excess"). Had the Legislature wanted to specify and mandate the vital components of actual notice and further delineate what qualifies as "sufficient facts," it could have done so in a fashion similar to its enumeration of the three components required for written notice under subdivision 1. See J.D. Donovan, Inc. v. Minn. Dep't of Transp. , 878 N.W.2d 1, 13 (Minn. 2016) (describing the "foundational rule of statutory interpretation that we do not, and cannot, add to a statute words intentionally or inadvertently omitted by the Legislature").
Nor does the statute import the enumerated requirements of subdivision 1's written-notice provision into subdivision 2's actual-notice provision. See Minn. Stat. § 340A.802, subd. 2 (providing that actual notice "complies with the notice requirement," which is set forth in subdivision 1). Had the Legislature intended to do so, it could have provided that "[a]ctual notice of the facts required in subdivision 1 complies with the notice requirement." But it did not, and our inquiry ends there. See In re Welfare of Child of R.K. , 901 N.W.2d 156, 160 (Minn. 2017) ("Our plain-language interpretation is sufficient to resolve the case.").
Certainly in some cases a claimant's exact identity will be a part of the corpus of "sufficient facts," but what is "sufficient" is a case-by-case determination. See Webster's Third New International Dictionary 2284-85 (2002) ("Sufficient is likely to refer to a quantity or scope that meets the demands of a specific situation ." (emphasis added)). The identity of a person is not "indispensable"-it is just one of many possible "sufficient facts." We therefore hold that subdivision 2 does not prescribe notice of certain indispensable facts, unlike the requisite elements of written notice that are needed to satisfy subdivision 1.
C.
The third and final issue of statutory interpretation is whether notice to a licensee's dram-shop attorney suffices as notice to the licensee. The court of appeals did not reach this issue, but it suggested that notice to American Legion's attorney might be capable of satisfying the actual-notice requirement. See Meyer , 2016 WL 7338739, at *7 (discussing the absence of "record evidence that [American Legion] or its attorney knew, within the relevant notice period, the identities of persons claiming damages"). Yet the existing body of dram-shop case law seems to assume, without ever analyzing the language of the statute or principles of agency law, that the liquor vendor being sued must have actual notice. During oral argument, American Legion's counsel conceded that agency principles apply.
It is well-settled that "[t]he rule that notice to an agent is notice to his principal is applicable to attorney and client." Minneapolis, St. Paul & Sault Ste. Marie R.R. Co. v.St. Paul Mercury Indem. Co. , 268 Minn. 390, 129 N.W.2d 777, 787 (1964). We see no reason that agency principles would not apply here; accordingly, actual notice to the licensee's dram-shop attorney is tantamount to notice directly to the licensee. See *18 Link v. Wabash R.R. Co. , 370 U.S. 626, 633-34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts ... which can be charged upon the attorney.' " (quoting Smith v. Ayer , 101 U.S. 320, 326, 25 L.Ed. 955 (1879) )); Day Masonry v. Indep. Sch. Dist. 347 , 781 N.W.2d 321, 334 (Minn. 2010) (acknowledging that knowledge of an agent is knowledge of the principal); Lebanon Sav. Bank v. Hallenbeck , 29 Minn. 322, 13 N.W. 145, 147 (1882) (concluding that the defendants "had, through their attorney, ... such notice and knowledge concerning the [mortgage]" that they "were chargeable ... with actual notice through their agent" (internal quotation marks omitted)).
Nothing in the plain language of subdivision 2's actual-notice provision is inconsistent with the common-sense conclusion that a licensee's dram-shop attorney is its agent for purposes of the actual-notice provision. The statute only demands that there be actual notice of facts "sufficient" to "reasonably ... put the licensee ... on [inquiry] notice of a possible claim." Minn. Stat. § 340A.802, subd. 2. When a licensee's attorney has actual notice of certain facts, it is reasonable to conclude that this knowledge would be passed on to the licensee, giving the licensee inquiry notice of the possible claims, as the statute requires. Indeed, attorney Nilan's own letter to the Buskeys' attorney instructed him to direct all correspondence intended for American Legion to Nilan instead.
Extending agency principles to the dram-shop context is quite consistent with the Act. The statute's plain language reflects that the Legislature has liberalized dram-shop notice requirements. See id. , subd. 1 (providing that errors or omissions do not necessarily void the validity of written notice); id. , subd. 2 (containing an actual-notice provision as a substitute for written notice); see also Jenkins v. Bd. of Educ. of Minneapolis Special Sch. Dist. No. 1 , 303 Minn. 437, 228 N.W.2d 265, 267-68 (1975) (considering "liberalizing amendments" to the notice-of-claim requirements in Minn. Stat. § 466.05, including an actual-notice provision and a doubling of the time in which to give notice); cf. Olcott v. City of St. Paul , 91 Minn. 207, 97 N.W. 879, 881 (1904) (noting that "we are not inclined to be technical in the construction of notices" of claim and that we "should construe [notice provisions] with reasonable liberality"). Acknowledging that agency principles apply to dram-shop actions is also consistent with "the direction of [our] opinions," which is to make the effect of notice-of-claim statutes "more fair and just." Jenkins , 228 N.W.2d at 267-69 (referring to "the progressive interpretations" of the notice-of-claim statute in the comparable Municipal Tort Claims Act, which balance the need for sufficient notice with "affording justice and fairness to the claimants").
We therefore hold that notice to the licensee's dram-shop attorney is notice to the licensee under Minnesota Statutes section 340A.802, subdivision 2.[4]
II.
Having clarified what the actual-notice provision of subdivision 2 requires, we now address whether the district court erred in granting American Legion summary judgment. This determination involves considering whether American Legion or its attorney-agent had actual notice of sufficient facts giving rise to inquiry notice of possible claims. We need not remand for reconsideration of whether the actual-notice requirement *19 was satisfied because the record is sufficient without additional fact-finding. See Voorhees v. State , 627 N.W.2d 642, 647 (Minn. 2001).
The record shows that American Legion itself, without considering its attorney's knowledge, did not have actual notice under subdivision 2. None of the Buskeys ever communicated directly with any employees, managers, or officers of American Legion regarding the fatal accident. American Legion did not even know of the general existence of the Buskeys, let alone the specific identities of the six Buskey claimants. The closest thing American Legion had to actual notice of the Buskeys' existence was the Meyers' written notice, which referenced "the death[ ] of Mary Jo Meyer-Buskey." But "there must be something more" than a liquor licensee's mere knowledge of "the serving of alcoholic beverages and a subsequent accident" in order "to reasonably put a licensee on notice of a possible claim" from the decedent's family members. Schulte v. Corner Club Bar , 544 N.W.2d 486, 489 (Minn. 1996). The only way for the Buskeys to satisfy the actual-notice provision, then, is if American Legion's dram-shop attorney, Nilan, had actual notice of sufficient facts that are imputed to American Legion.
In evaluating the facts that Nilan actually knew, we may consider circumstantial evidence of his knowledge. See Indus. Loan & Thrift Corp. v. Swanson , 223 Minn. 346, 26 N.W.2d 625, 630 (1947) ("Actual notice ... may be proved by circumstantial, as well as by direct, evidence." (emphasis omitted)); see also Norman v. Tradehome Shoe Stores, Inc. , 270 Minn. 101, 132 N.W.2d 745, 750 (1965) (stating that plaintiffs could "prove by either direct or circumstantial evidence" certain facts bearing on whether "the defendant could be said to have constructive notice," as opposed to actual notice).
The April 5, 2013 letter from Nilan to Mattson reveals the following circumstantial evidence of actual notice:
(1) Nilan was "retained to represent the Buffalo American Legion Post";
(2) Nilan knew that Mattson's "[c]lient" was the "[f]amily of Mary Jo Meyer-Buskey";
(3) Nilan knew the "[d]ate of [l]oss" was "October 19, 2012"; and
(4) Nilan's firm, "GRJN," had assigned "File No. 1400.499" to the "matter."
From this letter, we can infer that Nilan had "sufficient facts" to put his client, American Legion, on inquiry notice that the Buskeys had "possible claims" against it. First, this letter identifies the potential claimants as the "[f]amily of Mary Jo Meyer-Buskey," albeit identifying them in a generic fashion. Second, it references a "[d]ate of [l]oss," which suggests that Nilan knew that the Buskeys had suffered a "loss" and might be making a claim. Third, Nilan's use of the words "[y]our [c]lient" implies an understanding that an attorney-client relationship was formed, and persons often retain attorneys to pursue claims on their behalf. The existence of a file number for the matter may even suggest that Nilan knew that Mattson's inquiry was related to the other claims arising out of the October 19, 2012 fatal accident.
And viewing the record in the light most favorable to the Buskeys, it is reasonable to infer that Nilan knew even more than this letter suggests. See J.E.B. v. Danks , 785 N.W.2d 741, 746 (Minn. 2010) (noting that "[o]n appeal [from summary judgment], we must view the evidence in the light most favorable to the party against whom judgment was granted" (citation omitted) (internal quotation marks omitted)); Sauter v. Sauter , 244 Minn. 482, 70 N.W.2d 351, 353 (1955) ("[A]ll factual inferences *20 must be drawn against the movant for summary judgment ...."). Contrary to the dissent's assertion, Nilan had that "something more" that we contemplated in Schulte , 544 N.W.2d at 489, a case in which we held that it was not enough for the licensee to only know about the serving of alcoholic beverages and a subsequent fatal accident.
Nilan knew about the death of Mary Jo Meyer-Buskey from the Meyers' written notice to his client, American Legion. He received a compact disc containing Capitol Specialty's file, which presumably included the insurer's notes showing that Meyer-Buskey had a spouse and eight children. This compact disc likely included a copy of her obituary, which named all the Buskey claimants. This compact disc also likely contained Mattson's letter of representation to Capitol Specialty, which specified that Mattson was "retained to represent the family of Mary Jo Meyer-Buskey for claims related to her death in the accident."[5] (Emphasis added.) The timing of when Nilan reached out to Mattson and sent him a do-not-contact letter-shortly after Mattson sent the letter of representation to Capitol Specialty-is also noteworthy, bolstering the inference that Nilan had received information showing Mattson's involvement.
To be sure, the record concerning the knowledge of American Legion and its agent could have been better developed, but the record, when viewed in the favorable light accorded to the Buskeys, reflects actual notice and is sufficient to overcome summary judgment. For example, Nilan almost surely had received copies of the two written notices from attorneys for the other plaintiffs, the Meyers and Sjolander, which identified who Mattson did not represent. By process of elimination, then, when Nilan corresponded by letter with Mattson, he knew that Mattson represented other members of the Meyer-Buskey family. If Nilan had any doubt about who Mattson represented, he could have asked. See Donahue , 241 N.W.2d at 814 (noting that once claimants carry their burden of providing "sufficient facts," the onus shifts and "impose[s]" on the licensee an "obligation to elicit ... whatever facts were necessary" to determine if the claimed injuries fell "within the purview of the Civil Damage Act").
Tellingly, these formal notices of claim from the Meyers and Sjolander also provided essential details about liability. They described that: (1) American Legion made a liquor sale, (2) to Jennings, (3) on October 19, 2012, between the hours of 7:00 pm and 9:30 pm, (4) in violation of the Civil Damages Act, and that (5) Jennings drove his car and crashed into a vehicle, (6) driven by Meyer-Buskey, and occupied by the Meyers and Sjolander, (7) at approximately 9:30 pm that evening, (8) in St. Michael, Minnesota, (9) resulting in the death of Meyer-Buskey. These facts gave American Legion ample details concerning its potential liability to trigger it to investigate those possible claimants seeking damages . These reasonable inferences lead *21 us to conclude that American Legion had actual notice of its potential liability, which was enough to put it on inquiry notice of the remaining details bearing on its liability.
We acknowledge that Nilan did not have notice of all conceivably relevant facts, such as the full names of each family member or the exact nature and value of their claims. But the facts he did have were "sufficient" to shift the burden to the licensee "to elicit ... additional facts" concerning the precise contours of these possible claims. Donahue , 241 N.W.2d at 814. Although Nilan did not know for certain the precise claims the Buskeys would bring, he knew enough to infer that there was "a possible claim" they might pursue, which is all the statute requires. Minn. Stat. § 340A.802, subd. 2 (emphasis added). In other words, although Nilan did not have "everything," what he had was enough.
Specifically, he had notice of enough facts to give his client, American Legion, an opportunity to investigate the accident (which it promptly did); to pursue pre-suit negotiations and settlement; "to correct any defects revealed by the occurrence before more people suffer injury"; and to prevent the claims from going stale. Wegan v. Vill. of Lexington , 309 N.W.2d 273, 280 (Minn. 1981) (enumerating the "justifications for ... notice-of-claim provisions"); accord Naylor v. Minn. Daily , 342 N.W.2d 632, 634 (Minn. 1984). None of these pre-litigation functions was undermined by American Legion receiving actual notice, under subdivision 2, in lieu of written notice, under subdivision 1.[6] In the absence of prejudice to American Legion, we are hard-pressed to hold that the actual-notice provision was not satisfied here. See Naylor , 342 N.W.2d at 634 (stating that "the absence of notice" under the State Tort Claims Act could be a defense, provided that the defendant could "establish prejudice").
Because notice to the licensee's dram-shop attorney is notice to the licensee under subdivision 2, the actual-notice provision of the Civil Damages Act, we conclude that the district court erred in granting summary judgment to American Legion.
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings in accordance with this opinion.
Reversed and remanded.
Concurring in part, dissenting in part, Anderson, J., Gildea, C.J.
CONCURRENCE & DISSENT
ANDERSON, Justice (concurring in part, dissenting in part).
I agree with the court's plain-language interpretation of Minn. Stat. § 340A.802, subd. 2 (2016), but disagree with the application of the statute to the facts of this dispute. I conclude that American Legion did not have actual notice of sufficient facts to put it on inquiry notice of the possible claims of the Buskeys[1] and that *22 the district court properly granted summary judgment in favor of American Legion. I therefore join in Part I of the opinion, but not Part II.
The court's holding today is flawed for two primary reasons. First, the court stretches the summary-judgment standard beyond what it can bear, allowing the facts of this case-or rather, the lack thereof-to make bad law. Second, the court erroneously applies the actual-notice provision in subdivision 2 so as to render the written-notice requirement essentially meaningless and to expand the burdens on licensees. Because I believe American Legion was entitled to summary judgment, I would affirm the court of appeals on different grounds.
One of my primary concerns is that the opinion of the court stretches the summary-judgment standard beyond reason. Under Minn. R. Civ. P. 56.03, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," must demonstrate that the movant "is entitled to a judgment as a matter of law." Summary judgment is appropriate if the non-movant has the burden of proof on an issue and does not "present sufficient evidence to permit reasonable persons to draw different conclusions." Gradjelick v. Hance , 646 N.W.2d 225, 231 (Minn. 2002).
In dram-shop cases, the burden is on the plaintiffs to establish that the notice requirement in Minn. Stat. § 340A.802 (2016) is satisfied. See Schulte v. Corner Club Bar , 544 N.W.2d 486, 488 (Minn. 1996) (indicating that plaintiffs "bear the burden of proving" that the licensee "had notice of a possible claim"). Here, then, it is the Buskeys who bear the burden to "present specific facts showing that there is a genuine issue for trial," Minn. R. Civ. P. 56.05 (emphasis added), and to proffer "sufficient evidence to permit reasonable persons to draw different conclusions," Schroeder v. St. Louis County , 708 N.W.2d 497, 507 (Minn. 2006). When "scrutinizing" this evidence, "all ... factual inferences must be resolved ... in favor of the party opposing the motion." Juvland v. Plaisance , 255 Minn. 262, 96 N.W.2d 537, 542 (1959).
But we are to make these inferences based on the facts in the record before us, not based on inferences from the absence of facts in the record. Senogles v. Carlson , 902 N.W.2d 38, 48 (Minn. 2017) (providing that we "[v]iew[ ] the undisputed facts and the reasonable inferences from them in favor of ... the party against whom summary judgment was granted"). The obvious corollary of this proposition is that if there are no facts in the record on a certain point, then there are no inferences to be made. Ahlm v. Rooney , 274 Minn. 259, 143 N.W.2d 65, 69 (1966) (affirming grant of summary judgment, noting that "[i]n the absence of ... evidence[,] no inference ... can be drawn" and that it was "incumbent on plaintiff to introduce ... evidence in opposition to the motion for summary judgment"); see, e.g. , Beier v. Dresbach , 304 Minn. 545, 229 N.W.2d 17, 17-18 (1975) (affirming grant of summary judgment in a dram-shop case after "carefully review[ing] the affidavits and depositions" and "find[ing] no evidence which would support a reasonable inference" that the defendants illegally furnished alcohol).
I agree with the court that American Legion itself did not have actual notice of sufficient facts, but neither did its attorney-agent. Contrary to the court's assertion, we do not know that American Legion's attorney received a compact disc *23 from Capitol Specialty, let alone what was on that compact disc. The scant evidence in the record consists of the April 5, 2013 letter to attorney Mattson, representing the Buskeys, from American Legion's attorney, Nilan. At most, this letter reveals that Nilan represented American Legion, knew that Mattson represented the "[f]amily of Mary Jo Meyer-Buskey," knew the date of loss was October 19, 2012, and that Nilan had assigned a file number to the matter. It makes no reference to the individual Buskey plaintiffs, nor does it reference the Buskeys' intent to recover from American Legion. It fails to use words like "litigation" or "claims." Moreover, the letter does not even frame the dispute in an adversarial manner, such as using a subject line referencing litigation, whether existing or planned. The most that can be said about this correspondence is that it is a do-not-contact letter-something that could have been sent to any third party, not only a future adversary with a possible claim.
Beyond the April 5, 2013 letter, there is no record of the facts and notice that Mattson might have provided to Nilan on their behalf. The court ignores the significant number of holes in the summary-judgment record, opting instead to make untenable inferences from the many voids in the record.[2] Cf. In re Siders , 903 N.W.2d 218, 222 n.1 (Minn. 2017) (order) (McKeig, J., dissenting) ("The majority effectively assumes that the absence of evidence is evidence ...."). The record is silent as to phone calls, if any, between Mattson and Nilan. There are no witness statements or correspondence in the record setting forth even sparse facts supporting notice of possible claims by the Buskeys.
As we held in Schulte , there must be "something more" than notice of "the serving of alcoholic beverages and a subsequent accident." 544 N.W.2d at 489. Here, the Buskeys likely needed to introduce evidence that American Legion had some information about the claimants themselves, short of their specific identities. See also Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (indicating that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to deny summary judgment). The Buskeys simply did not carry their burden of proving that attorney-agent Nilan had actual notice of sufficient facts to give his client, American Legion, constructive notice of possible claims.
If the limited facts in this dispute are sufficient to satisfy the actual-notice provision, it is difficult to imagine what would be insufficient. See Schulte , 544 N.W.2d at 489 ("[T]here must be something more ...."). Here, much as an alternative result might seem preferable, the failure to provide timely written notice to American Legion, together with the absence of any other evidence in the record supporting notice of possible claims, leads inevitably to summary judgment in favor of American Legion.
My second concern relates to the practical effect of the court's application of the actual-notice provision on the statute as a whole. I fear that the court has applied the *24 actual-notice provision from subdivision 2 in a way that renders the written-notice requirement from subdivision 1 essentially meaningless. The court's decision improperly truncates Minn. Stat. § 340A.802, which diminishes the protections that statutory notice affords licensees. The effect is a limitation on the ability of licensees to fully investigate, and defend against, time-sensitive dram-shop claims. Dram-shop claims frequently turn on what servers and business owners recall about precisely when the driver was in the establishment; how much liquor the driver consumed; and other details, including, for example, any recollections about the driver's behavior. Memories of these events, particularly in a busy restaurant or bar serving hundreds of people in an evening, fade quickly. Endorsing the notice here as sufficient to survive summary judgment eviscerates the protective aspect of the notice requirement that the Legislature provided to licensees.[3]
Because the court's application of the law is inconsistent with the plain language of the statute and the summary-judgment standard, I cannot join in Part II of the court's opinion. Accordingly, I dissent.
GILDEA, Chief Justice (concurring in part, dissenting in part).
I join in the concurrence and dissent of Justice Anderson.

The Civil Damages Act, Minn. Stat. §§ 340A.801 -.802 (2016), is "known colloquially as the Dram Shop Act." Brua v. Minn. Joint Underwriting Ass'n , 778 N.W.2d 294, 297 (Minn. 2010). We refer to "liquor liability" and "dram shop" interchangeably throughout this opinion.

This letter does not qualify as written notice from the Buskeys, however, because it was provided to American Legion's insurer, not "to the licensee" as Minnesota Statutes section 340A.802, subdivision 1, requires.

The district court held that because American Legion did not receive actual or written notice, the court was deprived of jurisdiction over the Buskeys' claims. See Young v. 2911 Corp. , 529 N.W.2d 715, 716 (Minn. App. 1995) ("Determining whether the notice provisions of Minn. Stat. § 340A.802 have been complied with is a jurisdictional matter ...."). We need not, and do not, reach that issue today.

We need not reach the issue of whether notice to the licensee's general attorney, as opposed to its dram-shop attorney, would suffice.

The "family of Mary Jo Meyer-Buskey" is not an unduly indefinite or unlimited class of persons. Rather, it is a finite group of family members who, by statute, must have been emotionally or financially dependent on Meyer-Buskey. See Minn. Stat. § 340A.801, subd. 1 (providing a right of action only for "[a] spouse, child, parent ... or other person injured in ... means of support, or ... other pecuniary loss " (emphasis added)); Brua , 778 N.W.2d at 300 n.2 (describing the meaning of "pecuniary loss" and "means of support," which are not defined in the Civil Damages Act, to include "financial support" as well as loss of advice and companionship); see also Beck v. Groe , 245 Minn. 28, 70 N.W.2d 886, 897 (1955) ("[T]he right ... created by [the Civil Damages Act] is exclusive ." (emphasis added)).

Nor does our holding "eviscerate[ ]" the written-notice requirement from subdivision 1, as the dissent claims. The written-notice requirement in subdivision 1, as the dissent aptly notes, "is neither burdensome nor rigorous." Providing notice under subdivision 1 ensures that a plaintiff's claim will not be barred on technical grounds. Relying upon the safe-harbor provision of subdivision 2, by contrast, is more risky, as each case will be evaluated upon its specific facts to determine whether the licensee has sufficient facts to put the licensee on inquiry notice of a possible claim.

At the outset, it is important to note that this case does not involve dram-shop claims by victims directly injured by the accident. Instead, it involves claims by relatives of a direct victim, Mary Jo Meyer-Buskey, who are themselves strangers to the accident.

The court's conclusion is contingent on multiple inferences and assumptions, as demonstrated by its use of language such as "presumably," "likely," and "almost surely," as well as its "process of elimination" reasoning. This language runs counter to the summary-judgment standard that we stated in another dram-shop case: "[M]ere speculation, without some concrete evidence, is not enough to avoid summary judgment." Osborne v. Twin Town Bowl, Inc. , 749 N.W.2d 367, 371 (Minn. 2008) (citation omitted) (internal quotation marks omitted).

The written notice requirement is neither burdensome nor rigorous. In fact, the Legislature provided an exception for substantial compliance when "[a]n error or omission in the notice" is not of a "substantially material nature." Minn. Stat. § 340A.802, subd. 1.